JENNIE E. REILLY v. CHICAGO GUARANTY FUND LIFE SOCIETY.

January 25, 1899.

Nos. 11,467—(254).

## Life Insurance—Reinstatement of Insured—Construction of Health Certificate.

In 1885 an applicant for an insurance policy made a verified statement concerning his health, which was accepted by the company, and a policy duly issued, upon which the insured paid the assessments for a period of 10 years, when he defaulted in one payment on June 17, 1895. The by-laws of the company provided for reinstatement of the insured within one year after default, upon receipt of satisfactory evidence of good health and the payment by the member of all sums for which he might then be delinquent. The insured signed a health certificate, prepared and furnished by the company, dated July 25, 1895, which contained this clause: "I hereby certify that I am on this 25th day of July, 1895, and have continuously been, of temperate habits, in good health, and free from all diseases and infirmities." *Held*, that this certified clause included only the time during the delinquency, viz., from June 17, 1895, to July 25, 1895.

Action in the district court for Ramsey county to recover $5,000 upon an insurance policy. The court, Bunn, J., directed a verdict in favor of defendant, and from an order denying a motion for a new trial plaintiff appealed. Reversed.

*Palmer & Beek,* for appellant.

*How & Butler,* for respondent.

BUCK, J.

In December, 1885, Philip Reilly, then aged 42 years, applied to the Northwestern Guaranty Life Insurance Company of St. Paul for a life insurance policy of $5,000 on his life, which was issued and delivered to him in January, 1886, and which was to run until his death. The application contained numerous answers to printed questions submitted by the company concerning the health of Reilly, which were satisfactory to the company. On November 10, 1891, an agreement was entered into between said company and respondent for the reissuance of the policy by the latter to Reilly, to which he consented, and received in lieu thereof said reissued

policy, dated December 17, 1891, payable to his estate at his death; and he paid the required assessments and premiums on this last policy until June 17, 1895, when he neglected to pay the assessment or premium then due. The by-laws of respondent (article 5, § 5) provide as follows:

"Sec. 5. The board of directors or executive committee may reinstate a delinquent member at any time within one year upon receipt of satisfactory evidence of good health and the payment by the member of all sums for which he may then be delinquent."

And among the conditions and provisions printed on the back of the policy is this one:

"If this policy lapse or becomes forfeited through failure to make the stipulated deposits, it may be reinstated, upon approval of the executive committee of the society, by payment of all arrearages and the submission of satisfactory evidence of good health; but such reinstatement shall be optional on the part of the society, and the acceptance of overdue deposits or instalments shall not be held to establish a precedent for the receipt of deposits or instalments at dates other than those written in the indorsement hereon."

July 25, 1895 (38 days after the date of the default), the insured paid to the respondent all arrearages, and applied for a reinstatement of his policy. The application was made upon a printed form, prepared and furnished him by respondent; the blanks for date of application and number of policy being filled by the insured. The substance of the application is as follows:

"I hereby certify that I am on this 25th day of July, 1895, and have continuously been, of temperate habits, in good health, and free from all diseases and infirmities; and I hereby repeat all statements and warranties contained in my application for membership, and warrant the same and the statements therein, and each of them, to be full, complete and true. My certificate or policy No. 14,620, issued by the Chicago Guaranty Fund Life Society, having become forfeited by reason of my failure to make the payments as stipulated in said policy, I desire to be reinstated, and for this purpose tender herewith the amount of my delinquency, and agree that the acceptance of same shall be valid only on condition that said statements and warranties, in said application and herein, are full, complete and true; and, if the same or any of them are untrue, said certificate or policy shall be and is void. The receipt of said payment shall not change the time, nor be considered, or held to be, or consti-

tute a precedent for the payment of future mortuary calls, dues, guaranty fund instalments, annual deposits, or instalments thereof, as the case may be, under said certificate or policy."

On receipt of the money in payment of arrearages, with this application, the policy was reinstated.

June 16, 1896, upon application of the insured to have the beneficiary changed, and his wife, Jennie E. Reilly, designated as such, respondent took up and cancelled its policy originally issued December 17, 1891, and issued in its place the policy in suit. This policy has the same number, bears the same date and is identically the same in form and substance, as the original policy, except in the name of the beneficiary, and except as to the clause in the original policy reciting that it was issued in lieu of the policy of the Northwestern Guaranty Life Insurance Company, and that the application for that policy and the statements and representations made in such application applied to and became a part of respondent's policy.

The insured continued to pay the premiums or assessments on said policy until his death, which occurred June 10, 1897, and was caused by a gunshot wound in the head. Prior to October 1, 1897, appellant duly notified respondent of the death of the insured, and furnished to it due and satisfactory proofs thereof, as required by the terms of the policy, and the same were received, accepted, retained and acted upon by respondent without objection.

This action was commenced January 20, 1898. It appeared from the testimony that during the last months of the year 1892 the insured had suffered from la grippe, and during portions of the years 1893 and 1894 from asthma; but for many months before June 17, 1895, and from that time to July 26, 1895, and for a long time after that time, he was and continued to be in good health, and free from disease or infirmity. At the close of the evidence, counsel for defendant requested the court to direct a verdict for the defendant. This the court did, solely upon the ground that the application for reinstatement, as the court construed it, contained the representation and warranty—the truth of which was expressly made a condition to the validity of the reinstatement and policy—that the

insured was then, and had continually been, not only from the date the policy lapsed, June 17, 1895, but from December 23, 1885, the date of the application for insurance in the Northwestern Guaranty Life Insurance Company, or from December 17, 1891, the date of the issuance of respondent's first policy, in good health and free from all diseases and infirmities, and that, by reason of the sickness above referred to, the representations were false, and the reinstatement and policy thereby avoided.

The only question which we need determine arises upon the construction to be placed upon Reilly's health certificate, as follows, viz.: "I hereby certify that I am on this 25th day of July, 1895, and have continuously been, of temperate habits, in good health, and free from all diseases and infirmities,"—read, of course, in the light of the prior proceedings. The company contends that the words "have continuously been of temperate habits, in good health, and free from all diseases and infirmities," relate to the period between the date of the original application, viz. December 23, 1885, and July 25, 1895, the date of the application for reinstatement, and that this statement was untrue and vitiated the policy. We do not so construe the language used.

If Reilly had died at any time after the insurance, and before the default, no serious question could have been made but that the insurance could have been collected by the proper party, even if Reilly had been in poor health up to the time of such death. It seems to be a conceded fact that Reilly had suffered from asthma and la grippe, and received medical treatment therefor, during portions of the years 1892, 1893 and 1894. But at the time of the default in payment of the premium or assessment, and for some time prior thereto, and on July 25, 1895, he had been continuously in good health, and free from all diseases and infirmities; hence all risks had been paid for up to the time of such default. No matter if he had been taken sick on the day the insurance policy was issued, and had remained in poor health up to the day preceding such default, the policy would have been in force. It was not his poor health that caused the default, but nonpayment of the assessment. The policy had run nearly 10 years when the default occurred, and no complaint is made that he was not previously prompt in paying his

assessments. That he had been in poor health during two or three years in the interim does not affect the question.

The statements made by Reilly in the original application were true, and not challenged. His subsequent sickness was no fault of his own, and did not exonerate the company from liability. Its own by-laws expressly provided for reinstatement of a delinquent member at any time within one year, upon receipt of satisfactory evidence of good health, and the payment by the member of all sums for which he may have been delinquent; but, by the same by-law, this reinstatement was optional with the company. It exercised this option voluntarily, prepared its own form of certificate of health, made no inquiries as to the condition of his health prior to the date of his delinquency, and had no medical examination as to the condition of his health prior to the time of his default. It is a notorious fact that there are thousands of cases of life insurance, and in many instances the insured are in poor health for longer or shorter periods during the life of the policy, but this in no wise lessens the liability of the insurers. Risks from poor health and resulting deaths are some of the elements which constitute the ground of insurance business, and the obligation of the insurer to pay continues until death or default in payment of the assessment. The risk of poor health after issuance of the policy up to the time of default was in this case already paid for; and the consideration for reinstatement was the good health of the insured at the time of his application for the same, his certificate that he had continuously been of temperate habits, in good health, and free from all diseases and infirmities during the time of such default, and the payment by him of the delinquent assessment or premium. This language referred to must therefore be construed as relating to the period for which the delinquent premium was paid, viz., from June 17, 1895, to July 25, 1895, and not to a prior period, for which there was no default. In other words, the time of the delinquency, the payment of the premium for that time, and the continuous temperate habits and good health of Reilly, were co-extensive.

Further on in the certificate, Reilly repeats that his statements and warranties in his application for membership were full, complete and true, and says that, his policy having been forfeited by

reason of his failure to make payments as stipulated in said policy, he desires to be reinstated, and for this purpose tenders therewith the amount of his delinquency, and agrees that

"The acceptance of same shall be valid only on condition that said statements and warranties in said application and herein are full, complete and true; and, if the same or any of them are untrue, said certificate or policy shall be and is void."

The contents of the original application for membership related only to prior or then-existing obligations. The conditions existing during the delinquency, and until reinstatement, were apparently the same as existed at the date of the original application, except as to the age of the insured. Hence only two things were to be done, viz., payment by the insured of the delinquent assessment, and his reinstatement by the insurer. This was done, and everything seemed to be in statu quo until the death of the insured, June 10, 1897. If there is any ambiguity in the language used, it was the fault of the company. The view that it is doubtful and ambiguous is the only one favorable for the insurer, and, where such doubts and ambiguities exist, they must be resolved in favor of the insured or his beneficiaries. Geare v. U. S. Life Ins. Co., 66 Minn. 91, 68 N. W. 731; Mareck v. Mutual R. F. Life Assn., 62 Minn. 39, 64 N. W. 68; Loy v. Home Ins. Co., 24 Minn. 315.

If the language prepared and used by the company in the health certificate was therein inserted for the purpose of giving it the effect contended for by the respondent, then it would operate as a snare against the insured, and impose upon his estate or beneficiary a fatal loss, which he never contemplated, for he well knew that, as construed by the company, he was certifying to a falsehood, viz., that he had been continuously in good health from the time of the original application to the time of making the health certificate. If there is any uncertainty in the language used, the company is responsible for it, whether its insertion was the result of its own negligence, fraud or mistake.

Order reversed, and new trial granted.