\* MARY A. SIMPSON v. THE LIFE INSURANCE COMPANY OF VIRGINIA.

*Contract—Insurance Policy—" Incontestable Policy "—Death by Suicide.*

An original policy of insurance contained in one clause restrictions against certain travel, occupation and residence, and in another stipulated that if the insured should die by suicide the company should not be liable beyond the net value of the policy, to be ascertained by certain methods. Subsequently the company executed an agreement declaring that " all restrictions of travel, occupation and residence expressed in the original policy are hereby waived, and that said policy shall from this date be incontestable, and when the policy becomes a claim the amount of insurance shall be paid immediately upon approval of proof of death." The insured paid all premiums as they fell due and died by suicide : *Held*, in an action to recover the amount of the policy, (1) that by the new contract the policy was rendered " incontestable " for any cause except nonpayment of premiums and fraud, and (2) that the " amount of insurance " payable when the policy became a claim by the death of the insured was the full amount expressed upon the face of the policy.

\* MACRAE, J., dissents.

CIVIL ACTION, tried before *Winston, J.,* at the Fall Term, 1894, of the Superior Court of RUTHERFORD County, upon a case agreed, from which it appeared that the plaintiff, Mary Alice Simpson, is the widow of Robert Simpson, deceased, and the other plaintiffs are his children; that Robert Simpson on the 15th day of May, 1875, and also on the 15th day of May, 1876, insured his life for the sum of $1,000 in the North Carolina State Life Insurance Company, and received from said company two policies of insurance, each for the sum of $1,000, to be paid at his death to his wife and children.

The fourth clause of the policies contained restrictions as to travel and residence in certain countries and as to engaging in certain occupations.

The fifth clause was as follows:

" That in case the death of the insured shall be caused by the use of intoxicating liquors, or of opium ; or if the insured shall die by suicide, whether sane or insane; or from or in consequence of a duel, or the violation of law, or of any condition or agreement contained in this policy, or the application upon which this policy is issued, this company shall not be liable beyond the payment of the net value of the policy, determined by the American Experience Table of Mortality, and six per cent. interest."

On the 13th day of April, 1887, the defendant The Life Insurance Company of Virginia assumed the payment of said policies when they should become due, and on the same day executed and delivered to the said Robert Simpson a contract in writing as follows:

" In accordance with the application made to them this 13th day of April, 1887, by Robert Simpson, the holder of policy No. 2034, The Life Insurance Company of Virginia hereby changes said policy (hereafter called the original policy) to a term policy, renewable annually without medical examination by the payment of premiums for each age of life according to the published rates of the company for annual renewable term policies.

" It is agreed that the term policy shall be continued in force for the same amount as the original policy by the payment at the next renewal, and subsequently at such times as are named in the original policy, of the annual, semi-annual or quarterly premiums set opposite the then nearest age of the insured in the aforesaid table. ·* * * *

" The company further agrees, that all restrictions of travel, occupation or residence expressed in the original policy are hereby waived, and that said policy shall from this date be incontestable, and when the policy becomes a claim the amount of insurance shall be paid immediately upon approval of proof of death."

At the same time a like contract was made in regard to the other policy. Robert Simpson, from the said 13th day of April to the time of his death, paid and the said defendant received all premiums due upon said policies.

Robert Simpson died by suicide on the 2d day of January, 1894.

The plaintiffs bring this action upon said policies for the sum of $2,000.

The defendant contended that under the 5th condition in said policies, it was not liable beyond the payment of the net value of said policies, determined by the American Experience Table of Mortality, and six per cent. interest, and in its answer the defendant tendered judgment for that amount.

The plaintiffs contended that the restriction as to suicide was waived by the contract of the 13th of April, 1887, and that by virtue of said contract said policies became incontestable, and said suicide clause was waived.

Upon the above facts the Court was of the opinion, and so adjudged, that the plaintiffs were entitled to recover the sum of $2,000, and the cost of the action.   Defendant appealed.

*Messrs. McBrayer & Durham,* for plaintiff.

*Messrs. Osborne, Maxwell & Keerans,* for defendant (appellant).

BURWELL, J.: The defendant agreed " that all restrictions of travel, occupation or residence expressed in the original policy" should be waived.  By this stipulation the fourth section of the original policy was in effect stricken out, and forms no part of the contract between these parties.

It further agreed that the policy should be from the date of that agreement "incontestable," and as if to emphasize this promise it added that when the policy became a claim " the amount of insurance " should be paid to the beneficiary immediately upon approval of proof of death.  If the policy had lapsed, or been discontinued, as by non-payment of the stated premium, it would not, upon the death of Robert Simpson, have become a claim against the defendant insurer. It was in full force at the time of that death and has become " a claim," and the plaintiff demands the " amount of insurance."  What is meant by " the amount of insurance?" Certainly, the sum for which the life was insured—the sum which, under the contract, was to be paid to the plaintiff in case of her husband's death as indemnity for her loss.  Those words cannot, we think, be construed to mean " the net value of the policy," a sum which, by the terms of the original contract, was to be paid under certain circumstances in lieu of the amount of insurance, to-wit, $2,000.  This construction is consonant with the preceding provision that the policy should be "incontestable."  The quality of incontestability could with no propriety be predicated of this contract of insurance if it was still allowed to the insurer to dispute its liability to the insured for the " amount of the insurance," upon the ground that the death was caused "by the use of intoxicating liquor or opium, or from the violation of law, or any condition or agreement contained in this policy, or the application upon which this policy is issued."  And yet, if it may now, under its contract, contest with this beneficiary as to its liability for the amount of insurance, upon the allegation that the deceased committed suicide, it may contest

with beneficiaries under other similar contracts upon the grounds enumerated above. If this can be done, the policy is certainly not incontestable, for the whole field of dispute would then be open to the defendant.

In Bliss on Life Insurance (2d Ed., page 428), the word "indisputable" is used to designate the quality here expressed by the word "incontestable." In a note on page 431, that author remarks: "Lord Campbell says (*Wheelton* v. *Hardisty*, 8 E. & B., 232, 283) that a promise that all assurances shall be unquestionable means indisputable, and amounts to an absolute guaranty that no objection shall be taken to defeat the policy on the death of the person whose life is insured, subject to the implied exception of personal fraud, which will vitiate the contract." This policy became, by virtue of the defendant's agreement, what Mr. Bliss, on page 432, denominates "a really indisputable policy," which should be "subject to no condition whatever."

Affirmed.

MacRae, J. (dissenting): I cannot concur with the reasoning or the conclusion arrived at by a majority of the Court in this case. It seems to me that by all the rules of construction, the agreement of defendant that the policy should be incontestable had reference to the matters named in the same sentence, "all restrictions of travel, occupation or residence."

Further, the express agreement in the original policy was that, if the insured should die by suicide, the company should not be liable beyond the net value of the policy. In other words, in the case of natural death, the amount of insurance was $2,000; in case of suicide, it was only the net value of the policy, and this the defendant is not contesting.