TITUS MARECK and Others, Executors, v. MUTUAL RESERVE FUND LIFE ASSOCIATION.[1]

July 10, 1895.

Nos. 9304—(207).

### Life Insurance—Suicide—Incontestable Clause.

The defendant issued to B. a life insurance policy for $5,000, payable at his death to his personal representatives. One clause on the printed policy provided that: Death of the member by his own hand, whether voluntary or involuntary, sane or insane, is not a risk assumed by the association in this contract; but in every such case there shall be payable, subject to all the conditions of this contract, a sum equal to the amount of the assessments paid by said member, with six per cent. interest; but the board of directors or the executive committee may, in writing, waive this condition. Written in ink across the face of the policy, and forming a part of it, was the following: After five years from the date of this certificate, it is incontestable for any cause, except nonpayment of dues or mortuary assessment, the age of the applicant being correctly stated in the application for the certificate. The age of the insured was correctly stated in his application, and all dues and mortuary assessments were duly paid up to the time of his death. More than five years after the date of the certificate, the insured came to his death by his own hand. *Held,* that the "incontestable clause" applied, and that the company was liable for the full sum of $5,000.

Action in the district court for Hennepin county to recover $5,000 on a policy of insurance. The defendant in its answer and on the trial offered to pay to the plaintiffs a sum equal to the amount of assessments paid by the testator to it, with interest, but plaintiffs refused to accept the same. The case was tried on an agreed statement of facts before Russell, J., who found in favor of plaintiffs and ordered judgment for the sum of $5,000, with interest. From a judgment entered in pursuance of said order defendant appealed. Affirmed.

*Cobb & Wheelwright,* for appellant.

*John F. Byers,* for respondents.

[1] Reported in 64 N. W. 68.

MITCHELL, J.[2] In August, 1886, the defendant issued to one Bof-ferding, plaintiffs' testator, a certificate or policy of life insurance for $5,000, payable to his legal representatives within 90 days after receipt of satisfactory evidence of his death. Paragraph 9 of the policy, which was a printed form, reads as follows: "Death of the member by his own hand, whether voluntary or involuntary, sane or insane at the time, is not a risk assumed by the association in this contract, but in every such case there shall be payable, subject to all the conditions of this contract, a sum equal to the amount of the as-sessments paid by said member, with six per cent. interest; but the board of directors or the executive committee of the association at its option may, in writing, waive this condition." Paragraph 11 pro-vides that the policy is issued and accepted subject to the express conditions, among others, that if the insured should remain 48 hours in any place after yellow fever shall have been declared epidemic, and death shall ensue from that disease, or if he shall engage in certain specified hazardous employments, or engage in dueling, etc., and death shall result therefrom, then in every such case the contract shall be null and void, and all payments made thereon forfeited to the association. Written in red ink across the face of the policy, and forming a part thereof, was the following provision: "After five years from the date of this certificate it is incontestable for any cause, except nonpayment of dues or mortuary assessment at the times and place, and in the manner herein provided—the age of the member being correctly stated in the application for this certificate."

The age of the insured was correctly stated in his application for the certificate, and he duly paid all his dues and mortuary assess-ments up to the time of his death. In September, 1893, while the policy was in full force, and more than five years after the date of the certificate, the insured came to his death by his own hand. The only question in the case is whether the company is bound to pay the $5,000, or only a "sum equal to the amount of the assessments paid by said member, with six per cent. interest."

Defendant's contention is that the contract contemplates two sep-arate and distinct risks,—death by suicide, and death from any other cause; that in the latter case it promised to pay $5,000, and in the former only the amount of premiums paid, with interest;

[2] Collins, J., took no part.

that the "incontestable clause" is inapplicable, because the company is not contesting the policy, but only proposing to pay according to its terms; that death by suicide was not a risk which they assumed, except to the extent of the premiums paid, with interest.

While the literal language of the contract lends an air of plausibility to this argument, yet we do not think it is sound. There is nothing in the policy contemplating two distinct and separate risks. The assured applied for an insurance on his life of only one sum, viz. $5,000. The amount for which the policy was issued was $5,000, payable at his death, but coupled with numerous conditions, the breach of any one of which, if not waived, relieved the insurer from liability. Counsel for defendant admits, correctly, and, no doubt, advisedly, that if death had occurred from any of the causes enumerated in the eleventh paragraph the "incontestable clause" would have applied. But these risks were no more assumed by the company than was death by suicide. If not waived, death from any of them would have forfeited the right of the beneficiary to the $5,000, —the amount of the insurance. The only difference would have been that, in case of death from any of the causes named in the eleventh paragraph, the beneficiary would have had no claim either to the sum insured or for the refunding of the premiums paid, whereas, in the case of death by suicide, while the $5,000 would be forfeited, the company would be bound to refund the premiums. Except in this one particular, there is no essential difference between the conditions of paragraph 9 and of paragraph 11. In both cases the breach of the condition forfeits the $5,000.

There are two or three elementary rules of construction that are peculiarly applicable to contracts of this class. They are to be liberally construed in favor of the insured, so as not to defeat, without plain necessity, the object of the policy; and, if there is a doubt as to the meaning of terms in the policy excepting the insurer from liability, they are to be construed most strongly against him. As is said in one case: "That is the true meaning of my contract which I desire the other contracting party to put upon it; not that which, in my own favor, I wrap up in general phrase."

If there is a reasonable doubt as to the extent of the application of the "incontestable clause," it must be solved in favor of the beneficiary. This clause was inserted in the contract by the company

itself. Being written across the face of the policy, it was presum-
ably the last expression of the agreement of the parties, and the
one most in mind at the time of its execution. It was written there
for a purpose. That purpose was to provide that the policy should
be incontestable for any cause after five years, subject only to two
conditions: One was that the age of the insurer had been cor-
rectly stated in his application. The other was that his dues and
mortuary assessments should be duly paid. It seems to us that the
average mind would understand this as meaning just what it says,
and that it would apply to death from suicide as well as death from
the causes specified in paragraph 11. The policy said that the as-
sociation might waive the condition as to suicide, and it would nat-
urally be understood that by this clause the company agreed to
waive it after five years. To the layman the present contest would,
as plaintiffs' counsel suggests, appear very much like a contest over
an incontestable policy. Another reason why the insured might
well understand the clause as meaning this, and why the company
itself may have intended it to have that meaning, is the fact that
it is the custom of many life insurance companies to limit the opera-
tion of conditions as to suicide to a fixed period, and to make their
policies thereafter incontestable on that ground. See 13 Enc. Brit.
179. Our conclusion is that the construction placed upon the
policy by the trial court was correct.

Judgment affirmed.