(78 South. 299)

MUTUAL LIFE INS. CO. OF NEW YORK v. LOVEJOY. (3 Div. 265.)

(Supreme Court of Alabama. Dec. 20, 1917. On Application for Rehearing, March 23, 1918.)

1. INSURANCE ⬅365(2)—LIFE POLICY—REINSTATEMENT—CONDITIONS—SUICIDE.

Where holder of life policy became delinquent, and was reinstated, condition of reinstatement, avoiding liability if insured died by his own hand within one year from reinstatement, was invalid, unless expressed in or made a part of the policy as revived.

2. INSURANCE ⬅146(3)—LIFE—POLICY—CONSTRUCTION.

Insurance contracts are to be liberally construed in favor of the insured.

3. INSURANCE ⬅365(1)—LIFE—POLICY—SUICIDE CLAUSE—REINSTATEMENT.

Where original policy avoided liability for insured's death by suicide within one year, and after suspension insured was reinstated, such reinstatement did not revive the clause against suicide, so as to avoid liability on insured's death by suicide within one year after reinstatement.

Sayre, J., dissenting.

On Application for Rehearing.

4. INSURANCE ⬅400—LIFE INSURANCE—POLICY—INCONTESTABILITY CLAUSE.

Insurance policy, avoiding liability for death by suicide within one year, and providing that it should be incontestable after two years, precluded company from defending on ground of suicide, where the policy had been in force more than two years, though committed within one year after reinstatement.

5. INSURANCE ⬅146(1)—LIFE INSURANCE—POLICY—CONSTRUCTION.

Insurance contracts should be construed as a whole in order to ascertain the intention of the parties.

6. INSURANCE ⬅146(1)—FORFEITURE—CONSTRUCTION.

Forfeitures are not favored by the law.

7. INSURANCE ⬅372—WAIVER OF CONDITIONS.

The insurer may waive conditions of the policy intended for its benefit.

Anderson, C. J., and Somerville and Gardner, JJ., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by T. E. Lovejoy, administrator of W. C. Lovejoy, deceased, against the Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant appeals. Affirmed.

On the 2d day of March, 1912, the Mutual Life Insurance Company of New York issued a policy of insurance on the life of W. C. Lovejoy, in which there were the following provisions:

"The mutual Life Insurance Company of New York, in consideration of the annual premium of $93.90, the receipt of which is hereby acknowledged, and of the payment of a like amount upon each 2d day of March hereafter, until twenty full years' premiums have been paid, or until the prior death of the insured, promises to pay, at the home office of the company, in the city of New York, upon receipt at said home office of due proof of the death of Welcome C. Lovejoy, of Montgomery county, state of Alabama, herein called the insured, two thousand five hundred dollars ($2,500.00), less any indebtedness hereon to the company and any unpaid portion of the premium for the then current policy year, upon surrender of this policy, properly receipted, to his executors, administrators or assigns, the beneficiaries, with the right of revocation.

"This policy and the application therefor, copy of which is indorsed hereon or attached hereto, constitute the entire contract between the parties hereto.

"Except as herein provided, the payment of a premium, or installment thereof, shall not maintain this policy in force beyond the date when the next premium, or installment, thereof, is payable. If any premium, or installment thereof, be not paid before the end of the period of grace, then this policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the company, except as hereinafter provided.

"It is understood and agreed that the risk of death will not be covered by the policy provided such death occur by my own act, whether sane or insane, during the period of one year next following the date of issue (as specified in the application).

"The company shall not be liable hereunder in the event of the insured's death by his own act, whether sane or insane, during the period of one year after the date of issue of this policy, as set forth in the provisions of the application indorsed hereon or attached hereto (as specified in the policy).

"This policy shall be incontestable, except for nonpayment of premiums, provided two years shall have elapsed from its date of issue.

"Unless it shall have been surrendered for its cash value, this policy may be reinstated at any time within three years from date of default in payment of any premium, upon evidence of insurability satisfactory to the company and upon payment of the arrears of premiums, with interest thereon at the rate of five (5) per cent. per annum, and at the option of the insured either (a) upon payment in cash to the company of any indebtedness which existed at said date of default, together with interest thereon at the above rate, or (b) upon reinstatement thereon

at the above rate, provided such reinstated increased indebtedness does not exceed the loan value at the date to which reinstatement is made."

The insured failed to make the payment of the premium due and payable March 2, 1914, and continued in default for more than 30 days thereafter. The appellant gave notice to the insured that the policy had been forfeited, under its terms, because of the nonpayment of the premium mentioned. Whereupon, on May 14, 1914, the insured made application for reinstatement of the policy, on a blank furnished by the company, signed by him, together with a medical examiner's report, acting for the insurance company. At the same time, the insured paid the company the past-due premiums, with interest. The insurance company approved the application; said application having been made to the company's agent in the state of Alabama and forwarded by said agent to the home office in New York. In the application for reinstatement, among other things, there was provided the following:

"In consideration of the placing in force of the said policy, I, the undersigned applicant, agree, for myself and all persons having an interest in said policy, that the said company shall not be liable under said policy for any amount in any of the following cases: (1) If I shall die by my own hand or act, whether sane or insane, within one year from the death of such placing in force, etc."

The insured died by his own hand or act on August 25, 1914, of which due proof was made to the insurance company on September 22, 1914.

Upon the trial of the case in the circuit court, the main point sought to be raised by the various pleadings was whether or not the insured, by signing the application for reinstatement, waived his legal right subsisting in and created by the original contract of insurance as set out in the policy.

The complaint was in Code form. Appellant pleaded the general issue, and seven special pleas. Special pleas 2, 4, 5, and 5a averred the forfeiture of the policy for nonpayment of premium, the reinstatement of the policy on insured's application, and the violation by insured of the agreement that he would not die by his own hand or act, whether sane or insane, within one year from the placing in force. Appellee demurred to these pleas, and the demurrers were sustained. One of the grounds of demurrer assigned was that the pleas do not show that the alleged agreement of the insured, that defendant should not be held liable under said policy if insured died by his own hand, was plainly expressed in the policy sued on. Pleas 7 and 8 averred that insured committed suicide on August 25, 1914. Demurrers were interposed to these pleas and sustained. Plea 3 was one of set-off, to which no demurrer was interposed. Plea 6 alleged a violation of the terms of the original policy, and a forfeiture thereof because of the non-

payment of premium, to which no demurrer was addressed. Appellee joined issue on the plea of set-off, and replied specially to the sixth plea by filing special replications 3 and 4. Appellant demurred to these replications, but the demurrers were overruled. Thereupon appellant took issue on the replications, and filed special rejoinders Nos. 2, 2a, 3, 3a, 4, 4a, 5, 5a, to the third replication, and special rejoinders 7, 7a, 8, 8a, 9, 9a, to the fourth replication.

The court sustained appellee's demurrers to all of the special rejoinders. The case was tried by the court without a jury on the general issue, and special pleas 3 and 6, and replications 3 and 4. The plea of set-off was proven, and the court gave judgment for appellee for the amount claimed, less the amount proven to be due under the plea of set-off.

Steiner, Crum & Weil, of Montgomery, and Tillman, Bradley & Morrow, of Birmingham, for appellant. Ball & Samford, of Montgomery, for appellee.

GARDNER, J. On March 2, 1912, appellant issued a policy of insurance on the life of W. C. Lovejoy, containing a provision making said policy void on failure to pay a premium within 30 days after it became payable. The insured defaulted in the payment of the premium payable March 2, 1914, and continued in default for more than 30 days thereafter. Appellant gave notice to the insured that the policy had been forfeited under its terms because of the nonpayment of the premium. The policy provided for the reinstatement of same within three years from the date of default in the payment of any premium "upon evidence of insurability satisfactory to the company," and also the payment of the arrears of premiums with interest thereon. On March 14, 1914, the insured made application for reinstatement, submitting his application in writing, and as a part thereof, also, the medical examiner's report. At the same time he paid the past-due premiums with interest. The premiums were accepted, the application approved, and the policy reinstated. On August 25, 1914, the insured died by his own hand or act, proof of which was made to appellant on September 22d following.

In the application for reinstatement the insured had agreed that appellant would not be liable under the policy should he die by his "own hand or act, whether sane or insane, within one year from the date of such placing in force." And the violation of this agreement is relied upon by the appellant as a complete defense to this cause of action.

One of the grounds of demurrer assigned to the pleas, setting up this defense, takes the point that it does not appear that such an agreement in the application for reinstatement is plainly expressed in the policy sued

on, as required under section 4579 of the Code of 1907.

It is insisted on the part of the appellant that the provisions of the above-cited statute have no application to a renewal or the reinstatement of a policy, but only have reference to the original contract of insurance. This question was considered, however, by this court, in the comparatively recent case of Mutual Life Insurance Co. v. Allen, 166 Ala. 169, 51 South. 877, wherein, speaking as to this subject, the court said:

"We are of the opinion, however, that section 4579 is broad enough to include any contract or agreement as to the policy, whether it relates to the issuance of the policy, or to a renewal, revivor, or reinstatement of same. The policy of the statute was to inform the insured of his warranties affecting the validity of his contract by having them expressed in the contract. If they relate to the issuance of the policy, they should be expressed in the original policy. If they relate to a revival or renewal of the policy, they nevertheless relate to the policy contract, and should be expressed in or made a part of the policy as revived or renewed."

See, also, Empire Life Ins. Co. v. Gee, 171 Ala. 435, 55 South. 166; Satterfield v. Fidelity Mut. Life Ins. Co., 171 Ala. 429, 55 South. 200; Mutual Life Ins. Co. of N. Y. v. Allen, 174 Ala. 511, 56 South. 568; 14 Ann. Cas. (note) 1095.

[1] Under the express holding, therefore, of this court, the agreement in the application for reinstatement, here relied upon, in order to be binding, should have been expressed in, or made a part of, the policy as revived. It, therefore, not appearing that this was done, the agreement cannot be looked to, and is consequently eliminated from further consideration.

[2, 3] It is insisted by counsel for appellant, however, that if this agreement is not to be looked to and held binding, then the appellant may rely upon the agreement which is of like effect in the policy as originally issued, of date March 2, 1912. This insistence is based upon the theory that, although, the policy was dated March 2, 1912, and the agreement that there should be no liability in the event of the insured's death by his own act, whether sane or insane, was limited in time by the following language: "During the period of one year after the date of issue of this policy"—nevertheless, the reinstatement of the policy of March 14, 1914, revived the same, so that such provision should read as if from the date of the reinstatement, and not that of the original policy. This upon the reasoning that it becomes a new contract, as if then for the first time issued; and our attention is directed to the case of Pacific Mut. Life Ins. Co. v. Galbraith, 115 Tenn. 471, 91 S. W. 204, 112 Am. St. Rep. 862, which supports that view. We have read with much interest the opinion of the Tennessee court in the above-cited case. The authorities upon the question are, however, in conflict. See note in Gans v. Ætna Life Ins. Co., 214 N. Y.

326, 108 N. E. 443, L. R. A. 1915F, 703. It is a well-recognized rule that insurance contracts are to be liberally construed in favor of the insured, and, upon due consideration of the question, we are of the opinion that the holding in the Galbraith Case, supra, is not in harmony with this rule of construction, and we must respectfully decline to follow it.

Pleas 7 and 8 set up as a defense that the insured died by his "own hand or act, committed suicide." In Supreme Commandery Knights Golden Rule v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332, this court, speaking of a similar plea, said:

"The plea, consequently, attaching to its words their known legal signification, when used in, or applied to contracts of life insurance, imports voluntary, intentional deprivation of self-existence by the assured while in his senses. * * * Such an act being shown, if it is intended to excuse it, because of the mental unsoundness of the assured at the time of its commission, the fact, the matter of excuse, ought to have been relied upon by the plaintiff. The presumption of law is in favor of sanity, and the burden of proving insanity rests upon the party alleging it."

The case of Pauline Weil v. Travelers' Ins. Co., 78 South. 528 [1] (present term), a review by certiorari of the decision of the Court of Appeals, is an authority for the view that the incontestable clause in the policy here considered is no answer to a defense based upon the voluntary, intentional deprivation of self-existence by the assured while in his sound mind. This is, in our opinion, but the logical result of the decision of this court in the Ainsworth Case, supra, and we cite it with approval; also the decision of the North Carolina Supreme Court in Scarborough v. American National Ins. Co., 171 N. C. 353, 88 S. E. 482, Ann. Cas. 1917D, 1181, where the Ainsworth Case is quoted.

In the Ainsworth Case it is pointed out that an express agreement to pay the insurance money to the assured, in the event he committed suicide, would be repudiated by the court as offensive to law and good morals, and thus the public policy of this state was clearly and unmistakably declared as far back as 1882, and has not been questioned since that time either by the courts or the Legislature. The quotation from the Ainsworth Case, supra, in regard to the plea setting up self-destruction as a defense discloses that pleas 7 and 8 were sufficient, and were not subject to the demurrers interposed thereto. There was error therefore in sustaining the demurrer to these pleas. If plaintiff desired to avoid the same on the ground of mental unsoundness of the assured at the time of the commission of the act, this should have been brought forward by way of replication, and the issue of fact thus presented for determination. For the error, therefore, in sustaining the demurrers to pleas 7 and 8, the judgment of the court below will be reversed.

What we have here said disposes of the

---

[1] See, also, 80 South. 348.

meritorious questions presented on this appeal; although, we have not treated the numerous pleas, replications, and rejoinders, together with the demurrers thereto, separately. So far as appears from the record before us, the conclusion which we have here announced, leaves but the one issue of fact to be determined, that is, as to the mental soundness of the assured, if replications to pleas 7 and 8 are filed presenting the same.

Reversed and remanded. All the Justices concur, except SAYRE, J., who dissents.

## On Application for Rehearing.

MAYFIELD, J. [4] On this application for a rehearing the majority, consisting of McCLELLAN, SAYRE, and THOMAS, JJ., and the writer, have reached the conclusion that we were in error on the original hearing, in so far as we held that the "incontestable clause" in the insurance contract or policy sued on did not estop or preclude the defendant insurance company from setting up, as a defense to this action on the policy, that the insured committed suicide or took his own life while sane. This clause reads as follows:

"This policy shall be incontestable, except for nonpayment of premiums, provided two years shall have elapsed from its date of issue."

The two years from its date had elapsed before the death of the insured, and at that date all premiums had been paid; and hence, by the very terms of the contract of insurance, the policy was incontestable. To allow the insurance company to set up this defense, in order to defeat the action, would be to ignore this clause of the contract, or to make and enforce a new contract for the parties.

Without either affirming or denying that suicide while sane is a crime, or that it is not within the risk of a life insurance policy unless expressly so provided, or that, if so provided, the provision would be void as against public policy, we hold that the object and effect of the incontestable clause is to prevent any such questions from arising, or being set up by the insurer as a defense to an action on the contract, after the death of the insured. We fail to see why such a clause or provision is not valid, or why the courts should not enforce it. We cannot presume, in the absence of proof, that either party to the contract intended to violate the law, or to make a contract against public policy. If parties to an insurance contract or any other contract should attempt to incorporate a provision in violation of a statute or against public policy, the attempt would fail; the contract would be void, and would not be enforced by the courts. The contract of insurance here sued upon, on its face shows no such attempt on the part of either party. The incontestable clause in question was not, so far as we are informed, intended by the parties or either of them to be given such effect. No court, so far as we are advised, has construed such clause. Certain it is that this court has never construed such a clause. No such clause was involved in the Ainsworth Case, 71 Ala. 436, 46 Am. Rep. 332, and hence that decision cannot be held to be an authority against the present holding. Nor was any such clause involved in the case of Ritter v. Mutual Insurance Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693. The legal principle involved and decided in these two cases, and since recognized and followed, is well stated in the former (our own) case, by Brickell, C. J., as follows:

"Death, the risk of life insurance, the event upon which the insurance money is payable, is certain of occurrence; the uncertainty of the time of its occurrence is the material element and consideration of the contract. It cannot be in the contemplation of the parties that the assured by his own criminal act, shall deprive the contract of its material element; shall vary and enlarge the risk, and hasten the day of payment of the insurance money." 71 Ala. 436, 447, 46 Am. Rep. 332.

The concrete question decided in the Ainsworth Case, as stated by Freeman, in his headnote of the case, was as follows:

"Under a contract of life insurance issued by a mutual company, conditioned to be subject to any by-laws thereafter to be enacted, the insured is bound by a subsequent by-law forfeiting such policies when the insured should die by his own hand, sane or insane." 71 Ala. 436, 46 Am. Rep. 332.

These cases, therefore, are not decisions contrary to our present holding on the rehearing. There was no incontestable clause in the contracts there under consideration, and hence there could have been no decision of the question, whatever may have been the dicta.

These incontestable clauses are material and valuable provisions in contracts of life insurance. They are stressed by insurance companies as being valuable to the insured or to the beneficiary, because affording the assurance that if the insured lives up to his contract the company will not, upon his death, contest the payment of the amount agreed to be paid, though without such provision the company would have a good defense. It would not do to treat such clauses as mere glittering generalities, inserted in the contract by the insured to induce persons to insure in the company offering same, rather than in a company not so in advance agreeing to waive all defenses, except those specified, and then allow the insurer to defend, as if it had not, for a consideration, agreed to waive its right to defend. Unquestionably, the insurance company can waive any defense after death; and we see no reason why it cannot, as a part of the contract, waive before death the right to defend. Of course if it is made to appear that the making or procuring of such a stipulation was a mere attempt to avoid or evade the law, or a scheme on the part of

the insured to induce the company to insure his life against suicide while sane, intending, at the time, to take his own life while sane, then the defense might be availing notwithstanding the incontestable clause which was thus procured by fraud. In such case there would not in law be a binding contract, because of the inherent intent to violate or evade the law, or of actual fraud in procuring the contract of insurance. It would not be a case of forfeiture of rights under a contract, nor a case of risks not included within the contract, but a case, in reality, of no contract. It is not, however, necessary for us now to decide this question; nor do we mean to bind ourselves by what we say, for we find the authorities divided on the issue whether or not all questions as to fraud in the procuring of the contract of insurance are foreclosed by such incontestable clauses, where the assurer is allowed a year or more in which to investigate these questions of fraud in procuring the insurance. It will be time to decide these questions when they arise. What we now say is only arguendo.

[5-7] There is nothing on the face of the policy now under consideration to show that there was any attempt to violate or evade the law, nor anything there appearing, or aliunde, to show that the insured in procuring it attempted to perpetrate a fraud upon either the company, the law, or the public. Insurance contracts should be construed as a whole, in order to ascertain the intention of the parties. We cannot presume, in the absence of any evidence, that a party would take out an insurance policy with the intent to commit suicide two or more years thereafter, or to lose his life by criminal action or by being executed; nor can we presume in the absence of law that the insured intended by the contract to perpetrate a fraud upon the insurance company. The insured is never permitted to write his own contract of insurance. It is written or printed by the insurance company, and for this reason, as well as others, the policy, when doubtful, is construed against the insurer who writes the contract and proposes the terms and conditions, which are accepted or agreed to by the insured. Forfeitures are not favored by the law, and the insurer may waive provisions in the policy or contract intended for his or its benefit.

Construing this contract as a whole, it seems that if the insured dies within two years of its date, the insurance company may contest the cause of the death, or may set up fraud or misrepresentation in the procuring of the insurance, or any other matter that would be a defense to the action on the policy; but if he does not die within two years from issuance of policy, and he pays all the premiums agreed to be paid, then the insurance company will not contest, or refuse the payment of the amount agreed to be paid, on any ground whatever. It was not an agreement to pay him, his estate, or the beneficiary, that amount if he committed suicide or was executed by virtue of the criminal law, or in any other manner contributed to his own death. The company merely agreed and bound itself that it would not litigate any of these questions, though without the incontestable clause they would be a defense. To say that the clause applies to all other defenses except suicide while sane, or death by wrongful, criminal act of the insured, is to read into the policy terms which are not there, and which the very language of the policy excludes.

Mr. Freeman, in a note to the report of the case of Supreme Conclave v. Miles, 92 Md. 613, as reported in 84 Am. St. Rep. 528, 554, 555, has well digested the law as to the effect of incontestable clauses, when the insured takes his own life. It is there said:

"Although an application for life insurance stipulates that the insurer shall not assume liability for the death of the insured by his own hand, yet if the policy declares that, subject to the stipulations requiring the payment of premiums on extrahazardous occupations, a claim under the policy by death occurring more than two years after its date shall be incontestable except for fraud in obtaining the policy, the insurer is liable for the death of the insured by his own hand occurring more than two years after the issuing of the policy. Godwin v. Provident, etc., Ass'n, 97 Iowa, 226 [32 L. R. A. 473] 59 Am. St. Rep. 411, 66 N. W. 157. To the same effect is Patterson v. Natural Premium Mutual, etc., Ins. Co., 100 Wis. 118 [42 L. R. A. 253] 69 Am. St. Rep. 899, 75 N. W. 980, where the policy provided that it should be absolutely incontestable from the date of its delivery and acceptance except for the nonpayment of premiums or misstatements of age. In line with these decisions is that in Simpson v. Life Ins. Co., 115 N. C. 393, 20 S. E. 517. So if the policy provides that the insurer does not assume the risk of the death of the insured by his own hand, sane or insane, but that such condition may be waived in writing, and then provides that after five years from date the policy shall be incontestable from any cause except nonpayment of dues or mortuary assessments if the age of the applicant is correctly stated, the company is liable for the full amount of the policy, if the insured commits suicide or dies by his own hand more than five years after the policy is issued, provided the insured has stated his age correctly, and all dues and assessments have been paid up to the time of his death. Mareck v. Mutual, etc., Ass'n, 62 Minn. 39, 54 Am. St. Rep. 613, 64 N. W. 68. If the policy provides that, if it shall be in force for five years, it shall thereafter be incontestable from any cause except for nonpayment of dues, but also provides that if the insured shall die by his own hand, whether voluntary or involuntary, sane or insane, the company shall not be liable, the suicide of the insured after the policy has been in force for five years does not relieve the insurance company from liability. Mutual Reserve Fund, etc., Ass'n v. Payne (Tex. Civ. App.) 32 S. W. 1063."

In the case of Sun Life Ins. Co. v. Taylor, 108 Ky. 408, 56 S. W. 668, 94 Am. St. Rep. 383, the opinion reviews the decisions and text-books. That decision is well headnoted as follows:

"A life insurance policy, providing that it shall be incontestable 'if the insured shall die three or more years after the date hereof, and

after all due premiums shall have been received by the company,' is, after compliance with such provision, incontestable, although it also contains a provision that it shall be void if the insured dies in consequence of his own criminal action,' and his death is in fact caused by such action."

In a later case, that of Royal Circle v. Achterrath, 204 Ill. 549, 68 N. E. 492, 63 L. R. A. 452, 98 Am. St. Rep. 224, after reviewing the authorities, it was said of the effect of an incontestable clause:

"The only conditions, binding upon the member remaining in good standing after the lapse of the two years, did not embrace any agreements in regard to suicide or death by his own hand. At any rate, the language of section 1 of article 16 leaves it doubtful whether such was the case or not. This being so, the rule applies that, where there is a reasonable doubt as to the extent of the application of the incontestable clause, it must be solved in favor of the beneficiary."

To the same effect is Robinson's Case, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; Montgomery's Case, 116 Ga. 799, 43 S. E. 79; Reagan's Case, 189 Mass. 555, 76 N. E. 217, 2 L. R. A. (N. S.) 821, 109 Am. St. Rep. 659, 4 Ann. Cas. 362. Many other cases may be found to the same effect, cited, and notes, in 11 Decennial Digest, subject Insurance, black line 400.

All the cases seem to hold that, where the policy provides that after a year or more the policy shall be incontestable except for certain grounds specified, and that time has elapsed, and none of the grounds excepted exists, then the policy will be given effect as it is written, and that it is incontestable on the ground of suicide or that of capital execution. Some of the cases do hold that if the insured intended, at the time of obtaining the insurance, to defraud the company, the policy may be contested notwithstanding the incontestable clause, because then there would be in law no contract, as if both parties had intended to violate the law. The authorities are not agreed on that question, however, and we will not attempt to decide it until it arises.

Upon the other questions presented on this appeal, the majority concur in the treatment thereof in the original opinion which appears above.

It therefore results that the judgment of reversal must be set aside and annulled, and one of affirmance here entered.

Affirmed.

McCLELLAN, SAYRE, and THOMAS, JJ., concur.

GARDNER, J. (dissenting). In the case of Supreme Commandery Knights Golden Rule v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 332, this court, speaking through Chief Justice Brickell, pointed out that an express agreement to pay the insurance money to the insured in the event of death by his own voluntary act, while of sound mind, would be repudiated by the court as offensive to law and good morals. As I take it, the public policy of this state was clearly and unmistakably declared in the Ainsworth Case as far back as 1882, and has remained unquestioned since that time either by the courts or the Legislature.

The Supreme Court of the United States holds to the same view in regard to the question of public policy. Ritter v. Mutual Life Ins. Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693; Northwestern Life Ins. Co. v. McCue, 223 U. S. 234, 32 Sup. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57. In the Ritter Case, supra, the court said:

"A contract, the tendency of which is to endanger the public interests or injuriously affect the public good, or which is subversive of sound morality, ought never to receive the sanction of a court of justice or be made the foundation of its judgment. If, therefore, a policy, taken out by the person whose life is insured, and in which the sum named is made payable to himself, his executors, administrators, or assigns, expressly provided for the payment of the sum stipulated when or if the assured, in sound mind, took his own life, the contract, even if not prohibited by statute, would be held to be against public policy, in that it tempted or encouraged the assured to commit suicide in order to make provision for those dependent upon him, or to whom he was indebted."

Continuing the discussion of this question, reference was made to the opinion of this court in the Ainsworth Case, and it is clearly demonstrated in the opinion that both courts had declared a like public policy. Not only is the Ainsworth Case cited, but the following extensive quotation is taken from that case:

"The subject was considered by the Supreme Court of Alabama in Supreme Commandery, etc., v. Ainsworth, 71 Ala. 436, 446 [46 Am. Rep. 332]. Chief Justice Brickell, delivering the unanimous judgment of that court, said: 'In all contracts of insurance, there is an implied understanding or agreement that the risks insured against are such as the thing insured, whether it is property, health, or life, is usually subject to, and the assured cannot voluntarily and intentionally vary them. Upon principles of public policy and morals, the fraud, or the criminal misconduct of the assured is, in contracts of marine or of fire insurance, an implied exception to the liability of the insurer. * * * Death, the risk of life insurance, the event upon which the insurance money is payable, is certain of occurrence; the uncertainty of the time of its occurrence is the material element and consideration of the contract. It cannot be in the contemplation of the parties that the assured, by his own criminal act, shall deprive the contract of its material element, shall vary or enlarge the risk, and hasten the day of payment of the insurance money. The doctrine asserted in Fauntleroy's Case, that death by the hands of public justice, the punishment for the commission of crime, avoids a contract of life insurance, though it is not so expressed in the contract, has not, so far as we have examined, been questioned, though the case itself may have led to the very general introduction of the exception into policies. The same considerations and reasoning which support the doctrine seem to lead, of necessity, to the conclusion that voluntary, criminal self-destruction, suicide, as defined at common law, should be implied as an exception to the liability of the insurer, or, rather, as not within the risks contemplated by the parties, reluctant as the courts may be to introduce by construction or implication exceptions into such

contracts, which usually contain special exceptions.' Again: 'The fair and just interpretation of a contract of life insurance, made with the assured, is that the risk is of death proceeding from other causes than the voluntary act of the assured, producing or intended to produce it;' and that 'the extinction of life by disease, or by accident, not suicide, voluntary and intentional, by the assured, while in his senses, is the risk intended; and it is not intended that, without hazard of loss, the assured may safely commit crime.' "

The Ritter Case was subsequently reaffirmed in Northwestern Life Ins. Co. v. McCue, the court concluding the discussion of this question by the use of the following language:

"These cases must be accepted as expressing the views of this court as to the public policy which must determine the validity of insurance policies, and which they cannot transcend even by explicit declaration, much less be held to transcend by omissions or implications."

In the case of Scarborough v. American National Ins. Co., 171 N. C. 353, 88 S. E. 482, Ann. Cas. 1917D, 1181, special reference is made to the Ainsworth Case, and quotation taken therefrom.

A review of these cases, therefore, disclose that the Ainsworth Case has been accepted by the courts of other jurisdictions, as declaring the public policy of this state, which, in my opinion, is sound and based upon good morals and should not now · be in effect repudiated. These authorities are based upon the proposition that it would be against public policy and good morals for parties to contract for the payment of an insurance policy when the insured came to his death by his own voluntary act, when of sound mind. The Ainsworth Case as well as the Ritter Case expressly declare that such a clause of insurance would be absolutely void as against public policy. As said by this court in the Ainsworth Case:

"An express contract to pay the insurance money to the insured, in the event he committed suicide, an increased premium being paid because of the risk, there could be but little, if any, hesitancy in repudiating as offensive to law and good morals."

Again, in Burt v. Union Central Life Ins. Co., 187 U. S. 362, 23 Sup. Ct. 139, 47 L. Ed. 216, the court said:

"Public policy forbids the insertion in a contract of a condition which would tend to induce crime, and as it forbids the introduction of such a stipulation, it also forbids the enforcement of a contract under circumstances which cannot be lawfully stipulated for."

The majority opinion of the court, written in response to the application for rehearing, does not take issue with this proposition. Indeed, it is manifestly sound, but the opinion proceeds upon the idea that by the incontestable clause the company has agreed not to interpose this defense. As reviewed in the Ainsworth Case, and the other authorities above cited, this clause could have no effect where the insured came to his death by his own voluntary act, while of sound mind, for the simple reason, as pointed out by these authorities, that such a contingency was not within the contract of insurance, and formed no part thereof, and such stipulation would have been absolutely void had it been in plain language written in the policy itself.

To hold that the incontestable clause embraces this defense is, in my humble judgment, to permit that to be done indirectly which under our own decisions, based upon sound public policy and good morals, could not be done directly. Based upon any line of reasoning, it results after all that the solemn judgment of a court is rested upon a foundation of crime, as said by the Supreme Court of the United States in the Ritter Case, supra:

"A contract, the tendency of which is to endanger the public interests or injuriously affect the public good, or which is subversive of sound morality, ought never to receive the sanction of a court of justice or be made the foundation of its judgment."

I forego further discussion of the question, however, but respectfully dissent from the holding of the majority of the court in this cause.

ANDERSON, C. J., and SOMERVILLE, J., concur.