## BYRD v. UNITED STATES.

No. 1839.

Circuit Court of Appeals, Tenth Circuit.

Oct. 9, 1939.

Rehearing Denied Nov. 10, 1939.

Hal M. Black, of Wichita, Kan. (H. F. Hudson, of Wichita, Kan., and Frank C. Wade, of Terre Haute, Ind., on the brief), for appellant.

R. T. McCluggage, Asst. U. S. Atty., of Topeka, Kan. (Summerfield S. Alexander, U. S. Atty., of Topeka, Kan., Julius C. Martin, of Washington, D. C., Director, Bureau of War Risk Litigation, Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Fendall Marbury, of Washington, D. C., Atty., Department of Justice, on the brief), for the United States.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action on a policy of war risk insurance issued to Earl W. Owens. It was brought by Anna Marguerite Thomison, as administratrix of the estate of Earl W. Owens, deceased, and in her individual capacity as beneficiary under the policy. While the action was pending Thomison died and it was revived in the name of C. M. Byrd, as administrator de bonis non of Owens' estate and as administrator of Thomison's estate.

The petition contained two counts. In the first it was alleged that on March 29, 1918, Owens enlisted in the military service of the United States; that on April 8, 1918, he applied for and received a $10,000 policy of war risk insurance; that on or about June 1, 1918, while in the military service of the United States and while such policy was in full force and effect, due to disease of the mind and body, he became unable to follow any gainful occupation with reasonable regularity and became totally and permanently disabled; that he was discharged from the Army on June 23, 1918, as an insane person; that his disability continued until his death on October 22, 1934; that on October 24, 1921, he was awarded total and permanent disability benefits; that the accrued installments under the award were paid, and current installments were paid until December 22, 1922, when payments under the award were terminated; that on October 14, 1932, he filed a claim for insurance benefits with the Director General of the Bureau of War Risk Insurance; and that the claim was denied.

The allegations of the first count were incorporated in the second count by reference. In the latter count it was further alleged that premiums were paid on the policy from December 22, 1922, until and including the month of July, 1926.

Plaintiff sought recovery on the first count for 240 monthly installments of $57.50 from June 1, 1918, less the 54 installments paid under the award; and in the event the court should find that Owens became totally and permanently disabled between December 22, 1922, and September 1, 1926, recovery in the alternative on the

second count for 240 monthly installments of $47.73, commencing with the inception of such total and permanent disability, and for the refund of premiums paid after such total and permanent disability arose. The United States filed a general denial.

Trial by jury was waived and the cause tried to the court. Byrd introduced evidence to establish that Owens became totally and permanently disabled on or about June 1, 1918.

The United States, over the objection of counsel for Byrd, introduced evidence to establish that the disability from which Owens suffered antedated his induction into the military service of the United States and the issuance of the policy. That was its principal defense.

At the close of all the evidence, the government interposed a motion for a directed verdict which was overruled. The court thereupon made the following findings:

"* * * the court * * * finds the issues generally in favor of the defendant and against the plaintiffs, and finds that the insured, Earl W. Owens, did not become permanently and totally disabled within the meaning of the law at any time while the policy of insurance sued upon herein was in effect through payment of premiums thereon."

Byrd did not by request for a declaration of law that he was entitled to judgment, motion for judgment, or other like motion, challenge the sufficiency of the evidence to support the findings of the trial court.

On March 12, 1938, judgment was entered for the United States.

The petition for appeal was filed April 27, 1938, and the appeal was allowed May 9, 1938.

■ Under well-settled limitations governing the review on appeal in jury-waived cases, obtaining before the effective date of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the sufficiency of the evidence to support the findings and judgment on this record is not open to review. White v. United States, 10 Cir., 48 F.2d 178, 181. Whether it would be feasible and just to apply the new rules in the instant case we need not determine because the judgment must be reversed on another ground.

■ Under Section 875, 28 U.S.C.A., the rulings of the court in the progress of the trial in a jury-waived case if excepted to at the time and duly presented by a bill of exceptions may be reviewed upon appeal. The phrase "rulings of the court in the progress of the trial" embraces rulings on the admission and rejection of evidence. City of Key West v. Baer, 5 Cir., 66 F. 440, 443; White v. German Alliance Ins. Co., 1 Cir., 103 F. 260.

■ It will be noted that in the special finding the court did not find that Owens was not totally and permanently disabled, but that he "did not become permanently and totally disabled within the meaning of the law at any time while the policy of insurance sued upon herein was in effect through payment of premiums thereon." This finding could be predicated as well on the evidence introduced over the objection of Byrd to establish that Owens' disability antedated his induction into the military service and the issuance of the policy as on the fact that it arose after the policy had lapsed. Hence, we think the question, was the defense that Owens' disability antedated his induction into the military service and the issuance of the policy barred by the incontestable provision, is presented for review.

Section 402 of Art. 4 of the Act of October 6, 1917, 40 Stat. 409, provided:

"That the director, subject to the general direction of the Secretary of the Treasury, shall promptly determine upon and publish the full and exact terms and conditions of such contract of insurance."

Pursuant thereto, the Director on October 15, 1917, published Bulletin No. 1, which in part read as follows:

"* * * if the insured became permanently or totally disabled before this policy was applied for, it shall, nevertheless, be effective as life insurance, but not against such disability."

Section 30 of the Act of August 9, 1921, 42 Stat. 157, reads as follows:

"A new section is hereby added to Article IV of the War Risk Insurance Act to be known as section 411, and to read as follows:

" 'Sec. 411. Subject to the provisions of section 29 of the War Risk Insurance Act and amendments thereto policies of insurance heretofore or hereafter issued in accordance with Article IV of the War Risk Insurance Act shall be incontestable after six months from date of issuance, or

reinstatement, except for fraud or non-payment of premiums.'"

Section 29, supra, 40 Stat. 609, read as follows:

"That the discharge or dismissal of any person from the military or naval forces on the ground that he is an enemy alien, conscientious objector, or a deserter, or as guilty of mutiny, treason, spying, or any offense involving moral turpitude, or willful and persistent misconduct shall terminate any insurance granted on the life of such person under the provisions of Article IV,. and shall bar all rights to any compensation under· Article III or any insurance under Article IV."

Section 307 of the World War Veterans' Act 1924, 38 U.S.C.A. § 518, reads as follows:

"Policies of insurance heretofore or hereafter issued shall be incontestable after the insurance has been in force six months from the date·of issuance or reinstatement, except for fraud or nonpayment of premiums and subject to the provisions of section 447 of this title. A letter mailed by the bureau to the insured at his last known address informing him of the invalidity of his insurance shall be deemed a contest within the meaning of this section. This section shall be deemed to be in effect as of April 6, 1917."

On November 1, 1922, the Veterans' Bureau ruled that the defense of antecedent disability was barred by the provision of Section 411, supra. See case of William Shortell, 22 G.C. 3729. On August 1, 1925, the Veterans' Bureau reaffirmed this ruling. See case of Harold A. Feiereisel, 34 G.C. 2004. We are advised by a memorandum filed herein by Honorable Frank T. Hines, Administrator of Veterans' Affairs, that those rulings reflect the practice followed by the Veterans' Administration until the decision of the Comptroller General in the case of Mabry W. Woodall, A-29723, 9 Comp.Gen. 291, January 16, 1930. See, also, Comptroller General's decisions in case of Hallam Singer, C-6836, 7 Comp. Gen. 526, and the case of Alexander M. Sinclair, XC-213,333, 8 Comp.Gen. 101.

Notwithstanding Section 518 was made retroactive to April 6, 1917, the courts and the Comptroller General on January 16, 1930, ruled that total permanent disability antecedent to the issuance of the policy constituted a good defense to a claim for total and permanent disability and that the same was not barred by the incontestable provisions of Section 518.[1]

Congress, by the Act of July 3, 1930, 46 Stat. 1001, 38 U.S.C.A. § 518, amended Section 518 to read in part as follows:

"All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military

---

[1] In Jordan v. United States, 9 Cir., 36 F.2d 43, 73 A.L.R. 312, decided November 12, 1929, the court held that a term policy did not cover total permanent disability which antedated the issuance of the policy, and that the incontestable provision of Section 518 was inapplicable to policies which matured within the six months period.

In Anderson v. United States, 9 Cir., 36 F.2d 45, decided November 18, 1929, the court held that a term policy did not cover total permanent disability antedating the issuance of the policy.

See, also, United States v.. Golden, 10 Cir., 34 F.2d 367.

In the case of Mabry W. Woodall, 9 Dec. of Comp.Gen. 291, 295, the Comptroller General, after citing the above cases, held:

"These decisions not only sustain the views of this office, but go farther and place no time limitation on the Veterans' Bureau within which there may be determined that the insured was in fact permanently and totally disabled when originally applying for insurance or applying for reinstatement and/or conversion thereof. There has not been overlooked the decision of Jensen v.·United States [D.C.], 29 F.2d 951, which was reversed November 12, 1929, by the Circuit Court of Appeals, 9 Cir., 36 F.2d 47.

"Accordingly, the rule may be stated that where the Veterans' Bureau has heretofore established or may hereafter establish the condition of permanent total disability at or prior to date of original application for insurance, or application for reinstatement and/or conversion of insurance, by a rating made at any time prior to the first payment of insurance under the policy, the insurance should be considered as invalid and no payments made thereunder, leaving the parties in interest to their recourse in the United States courts as provided by statute."

or naval forces of the United States, and subject to the provisions of section 23 [section 447 of this title] * * * Provided further, That this section shall be deemed to be effective as of April 6, 1917, and applicable from that date to all contracts or policies of insurance."

The Senate Report on this amendment stated:

"The purpose is to make all contracts or policies of insurance incontestable from date of issuance, reinstatement, or conversion, for all reasons except fraud, non-payment of premiums, or that the applicant was not a member of the military or naval forces of the United States. This incontestability would protect contracts * * * where the applicant was not in the required state of health, or was permanently and totally disabled prior to the date of application, or for any other reasons except those specifically mentioned in the statute. It is appreciated that this is a broad provision, but it was felt that it was necessary in order to do justice to the veterans, * * * and to overcome decisions of the Comptroller General which practically nullified the section as it now exists."

Nevertheless, the courts continue to hold that antecedent disability constituted a defense to a claim for total permanent disability benefits.[2]

But in United States v. Patryas, 303 U. S. 341, 58 S.Ct. 551, 553, 82 L.Ed. 883, the court held that the defense of antecedent disability was barred by the provisions of Section 518, supra, as amended. In the opinion the court said:

"The War Risk Insurance Act must be considered in the light of its passage during war, while men and women were being called into war service. This requires recognition of its generous and liberal purpose to provide 'greater protection for (soldiers, sailors and nurses) and their dependents.' Its passage indicated Congress conclusively presumed that every person, who had successfully undergone mental and physical examination for war service, was—when inducted into such service—insurable against death and total permanent disability. The act commanded that insurance against death and total permanent disability be granted, without medical examination, to every applicant who had previously been examined and accepted for war service. Congress manifestly intended by these sweeping provisions that policies should be granted without regard to the health of applicants and should be enforceable obligations against the government. Any other construction of this broad, wartime legislative grant to soldiers, sailors and nurses would take away the benefits Congress intended them to receive. The provisions of the War Risk Insurance Act are sufficiently comprehensive and inclusive to authorize its administrators to grant insurance covering past or future total permanent disability, if such action is

---

[2] In Stavros v. United States, D.C. Wash., 3 F.Supp. 213, decided June 27, 1932, the court held that a person totally and permanently disabled before entry into military service was not entitled to automatic war risk insurance.

In the following cases it was held that Section 518, as amended, did not bar the defense to an action on a term policy that the total permanent disability antedated the issuance of the policy: Hicks v. United States, 4 Cir., 65 F.2d 517, 520, decided June 15, 1933; United States v. Kaminsky, 5 Cir., 64 F.2d 735, 737, decided April 20, 1933; Davis v. United States, D.C.Va., 57 F.2d 871, decided March 28, 1932; Boulger v. United States, D.C.Mass., 60 F.2d 560, decided May 17, 1932; Mason v. United States, 8 Cir., 75 F.2d 54, rehearing denied February 6, 1935; Schmidt v. United States, 8 Cir., 63 F.2d 390, decided January 19, 1933; Nall v. United States, D.C.Miss., 8 F.Supp. 69, decided September 12, 1934.

See, also, United States v. Mathis, 10 Cir., 84 F.2d 451, decided June 16, 1936.

In United States v. Dupire, 8 Cir., 101 F.2d 945, decided February 21, 1939, it was held that the defense that the total permanent disability antedated reinstatement was barred by Section 518, as amended. See, also, United States v. Chandler, 5 Cir., 77 F.2d 452, decided May 8, 1935.

In United States v. Anders, 9 Cir., 88 F.2d 509, decided March 8, 1937, the court held in an action on a reinstated policy that the policy did not cover total permanent disability which arose prior to reinstatement.

In United States v. McIver, 4 Cir., 77 F.2d 208, decided April 22, 1935, and United States v. Stevens, 8 Cir., 64 F. 2d 853, decided April 3, 1933, the court held that total permanent disability at the time of reinstatement barred recovery on a reinstated policy.

found necessary to carry out its far reaching national plan and purposes. \* \* \*

"The conclusion is inescapable that Congress enacted the 1930 amendment in order to overcome the effect of the above rulings of the courts[3] and the Comptroller General, and with the intention to sustain the Bureau's previous administrative interpretation and practice under the incontestable provision.

"To resist payment of this veteran's insurance policy on the ground that he was totally and permanently disabled prior to the issue of the policy is to 'contest' payment within the generally accepted meaning of the word and violates the 'incontestable' provision. The purchaser of a policy contract containing a provision that the insurer waives its right to contest except for fraud, nonpayment of premiums, and lack of military or naval service is entitled to rely on the plain terms and inducements of the provision which limits the grounds for contest of liability to those specifically reserved. The incontestable provision here means that a claim of a veteran whose death or total permanent disability is established shall not be contested except for fraud, nonpayment of premiums, or on the ground that the insured had not really been a member of the war forces of the nation or because he was included in Title 38, U.S.C. § 447, 38 U.S.C.A. § 447. Congress evidently believed these exceptions afforded the government ample protection against impositions or unjust claims and intended to limit the right to contest these policies to the specific grounds reserved in the exceptions."

It is true, the policy involved in the Patryas case was a converted policy and the court adverted to the fact that the converted policy did not as did the term policies expressly limit liability to prospective total permanent disability, and for that reason the case is not controlling here. Nevertheless, the implications of language used in the opinion strongly support the conclusion here reached.

This being an action on a term policy the question is, Does Section 518, as amended, bar a contest on the ground that the risk was excluded by Bulletin No. 1 from the coverage of the policy? An analogous question has arisen in a number of cases involving commercial insurance policies containing incontestable clauses and provisions excluding death from suicide from the coverage of the policy. The decisions are in sharp conflict.[4]

---

[3] Jordan v. United States, 9 Cir., 36 F.2d 43, 73 A.L.R. 312; United States v. Golden, 10 Cir., 34 F.2d 367.

[4] In the following cases the court held that the incontestable provision was a bar to the defense: Mutual Life Ins. Co. v. Lovejoy, 201 Ala. 337, 78 So. 299, L.R.A.1918D, 860; Royal Circle v. Achterrath, 204 Ill. 549, 68 N.E. 492, 63 L.R.A. 452, 98 Am.St.Rep. 224; Mutual Protective League v. McKee, 122 Ill. App. 376, affirmed on other grounds, 223 Ill. 364, 79 N.E. 25; Seymour v. Mutual Protective League, 155 Ill.App. 21; Goodwin v. Provident Sav. Life Assur. Ass'n, 97 Iowa 226, 66 N.W. 157, 32 L.R.A. 473, 59 Am.St.Rep. 411; Supreme Court of Honor v. Updegraff, 68 Kan. 474, 75 P. 477, 1 Ann.Cas. 309; Mareck v. Mutual Reserve Fund Life Ass'n, 62 Minn. 39, 64 N.W. 68, 54 Am. St.Rep. 613; Simpson v. Life Ins. Co., 115 N.C. 393, 20 S.E. 517; Mutual Reserve Fund Life Ass'n v. Payne, Tex. Civ.App., 32 S.W. 1063.

In the following cases it was held that the defense was not barred by the incontestable clause: Mutual L. Ins. Co. of New York v. Kelly, 8 Cir., 114 F. 268; Hearin v. Standard L. Ins. Co., D.C. Ark., 8 F.2d 202; Mack v. Connecticut Gen. L. Ins. Co., 8 Cir., 12 F.2d 416; North American Union v. Trenner, 138 Ill.App. 586; Myers v. Liberty L. Ins. Co., 124 Kan. 191, 257 P. 933, 55 A.L. R. 542; Stean v. Occidental Life Ins. Co., 24 N.M. 346, 171 P. 786; Woodbery v. New York Life Ins. Co., 129 Misc. 365, 221 N.Y.S. 357; Starck v. Union Cent. L. Ins. Co., 134 Pa. 45, 19 A. 703, 7 L.R.A. 576, 19 Am.St.Rep. 674; Hall v. Mutual Reserve Fund Life Ass'n, 19 Pa.Super. 31; Childress v. Fraternal Union, 113 Tenn. 252, 82 S.W. 832; Scales v. Jefferson Standard L. Ins. Co., 155 Tenn. 412, 295 S.W. 58, 55 A.L.R. 537; Howard v. Missouri State L. Ins. Co., Tex.Civ.App., 289 S.W. 114; Ferrand v. New York Life Ins. Co., 8 Cir., 69 F.2d 159. See, also, Field v. Western Life Ind. Co., Tex.Civ.App., 227 S. W. 530; Supreme Lodge, K. P., v. Overton, 203 Ala. 193, 82 So. 443, 16 A.L.R. 649; Sun Life Ins. Co. v. Taylor, 108 Ky. 408, 56 S.W. 668, 94 Am.St.Rep. 383; Scarborough v. American Nat. Ins. Co., 171 N.C. 353, 88 S.E. 482, L.R.A. 1918A, 896, Ann.Cas.1917D, 1181; Collins v. Metropolitan Life Ins. Co., 27 Pa. Super. 353.

In view of this sharp conflict in the decisions as to the effect of an incontestable clause, resort to the language alone of Section 518, as amended, leaves the intent and purpose of Congress uncertain, but we think a consideration of the Senate report and the circumstances under which the amendment was adopted removes that uncertainty. Clearly, the amendment is not limited to converted or reinstated policies. The amendment reads, "All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion," except upon the specifically enumerated grounds, and it is expressly made retroactive to April 6, 1917.

The enumerated grounds of contest open to the United States are fraud, nonpayment of premiums, the fact that the applicant was not a member of the military or naval forces of the United States, and those specified in Section 23, World War Veterans' Act, 1924, 38 U.S.C.A. § 447. In the Senate report it was stated that the purpose of the amendment was "to make all contracts or policies of insurance incontestable *from date of issuance,*" (italics ours) except for the grounds enumerated in the section and in Section 447. It was further stated that "This incontestability would protect contracts * * * where the applicant * * * was permanently and totally disabled prior to the date of application."

The amendment and the report indicate no intention to make a distinction between original term policies and reinstated or converted policies. They manifest no intention to limit the bar of the defense of antecedent disability to reinstated and converted policies. Reinstatement and conversion are privileges accorded the insured. The original term policies were issued in recognition of a duty to those who entered the service and to effectuate a generous and liberal purpose to provide greater protection for them and their dependents. United States v. Patryas, 303 U.S. 341, 343, 58 S.Ct. 551, 82 L.Ed. 883; Act of October 6, 1917, § 400, 40 Stat. 409.

Those who entered the service underwent mental and physical examinations for war service. The converted policies were issued without medical examination. See Act of October 6, 1917, § 404, 40 Stat. 398, 410. It seems to us unreasonable and unjust to bar the defense of antecedent disability as to those who hold converted policies and leave it open as against those who received their term policies after undergoing satisfactorily a test of their mental and physical fitness for war service.

The fact that converted policies do not by their terms eliminate antecedent disability from the risk is not, in our judgment, a manifestation of an intention to grant a more liberal contract to those who converted, but a recognition that the defense of antecedent disability had been barred by the provisions of Section 518.

We conclude that Congress by the amendment of July 3, 1930, Section 518, supra, as amended, intended to overcome the decision of the Comptroller General in the Woodall case and the decisions of the courts therein adverted to, to restore the practice which obtained in the Veterans' Administration prior to the Woodall decision, and to bar the defense of antecedent disability with respect to term policies as well as to reinstated and converted policies.

It follows that the defense of antecedent disability was barred by Section 518, as amended, and that the court erred in admitting evidence to establish that defense.

The judgment is reversed and the cause remanded with instructions to grant Byrd a new trial.