## DAVIS v. UNITED STATES.
### No. 4966.

District Court, E. D. Virginia.
March 28, 1932.

Warren E. Miller, of Washington, D. C., Levin Nock Davis, of Accomac, Va., and

Robert H. McNeill, of Washington, D. C., for plaintiff.

Wm. P. Boehmer, Asst. U. S. Atty., of Norfolk, Va., for the United States.

WAY, District Judge.

Plaintiff contends that the supplemental answer seeks to contest the validity of the insurance contract upon which this suit is based, contrary, it is urged, to the provisions of section 307 of the World War Veterans' Act of 1924, as amended by the Act of July 3, 1930, § 24 (46 Stat. 1001 [38 USCA § 518]). That amendment reads as follows:

"Sec. 24. That section 307 of the World War Veterans' Act, 1924, as amended (section 518, title 38, United States Code), be hereby amended to read as follows:

"'Sec. 307. All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, and subject to the provisions of section 23: Provided, That the insured under such contract or policy may, without prejudicing his rights, elect to make claim to the bureau or to bring suit under section 19 of this Act on any prior contract or policy, and if found entitled thereto, shall, upon surrender of any subsequent contract or policy, be entitled to payments under the prior contract or policy: Provided further, That this section shall be deemed to be effective as of April 6, 1917, and applicable from that date to all contracts or policies of insurance.'"

The supplemental answer contains the following allegation at which the motion is directed: "If the complainant was totally and permanently disabled on the date of his discharge from the army he was as much disabled at the time of his induction into the military service of the United States as at any time subsequent thereto and that he has suffered no loss."

The government contends, as appears from the allegation quoted above, that if plaintiff is totally and permanently disabled as alleged, such disability existed *prior* to his induction into the service and before he made his application for insurance, and that risk of total and permanent disability occurring prior to his application for insurance is not a risk assumed by the government under the terms of the contract of insurance on which plaintiff's suit is based. To sustain that contention the government relies upon the distinction between contesting the validity of a policy, and the act of defending a suit based on a policy, on the ground that the risk on which recovery is sought is not covered by the policy.

This distinction is well established by the authorities. In Flannagan v. Prov. Life & Acc. Ins. Co. (C. C. A. 4th) 22 F.(2d) 136, at page 140, our Circuit Court of Appeals, speaking through Circuit Judge Northcott, said: "It would seem that, as this statute specifically refers to life insurance policies, it would have no application to the accident insurance policies under consideration here. It is not necessary to decide this point, however, as it has been held that, even where the provision as to contestability does apply, *seeking to uphold the plain provisions of the contract of insurance does not constitute a contest as to the validity of the policy.* 'Where there has been no assumption of risk, *there can be no liability.'* Hearin v. Standard Life Ins. Co. (D. C.) 8 F.(2d) 202. See, also, Mack v. Connecticut General Life Ins. Co. (C. C. A.) 12 F.(2d) 416, and cases there cited." (Italics supplied.)

See, also, Sanders v. Jefferson Standard Life Ins. Co. (C. C. A. 5th) 10 F.(2d) 143; Jolley v. Jefferson Standard Life Ins. Co. (1930) 199 N. C. 269, 154 S. E. 400. In Jolley v. Insurance Company, supra, 199 N. C. 269, 154 S. E. 400, at page 402, it is said:

"That is to say, the application of the incontestable clause precludes an insurance company from questioning the validity of the contract in its inception, or that it thereafter became invalid by reason of a broken condition. *Hence an ordinary incontestable clause cannot be used as a means of rewriting into the contract risks and hazards which the policy itself positively excluded.* Woodbery v. N. Y. Life Ins. Co., 129 Misc. Rep. 365, 221 N. Y. S. 357; Sanders v. Jefferson Standard Life Ins. Co. (C. C. A.) 10 F.(2d) 143; Scales v. Jefferson Standard, 155 Tenn. 412, 295 S. W. 58, 55 A. L. R. 537. A line-up of the courts upon the question will appear in the annotation contained in 55 A. L. R. 549." (Italics supplied.)

The provision in the amendment of July 3, 1930 (U. S. C., title 38, § 518 [38 USCA § 518]), upon which plaintiff relies, provides, among other things, that a certificate of insurance "shall be incontestable" from the date of issuance, etc., "except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United

States." It is urged by plaintiff that it was the intention of Congress in enacting that provision to preclude the defense that the total and permanent disability alleged occurred prior to the application for insurance. To sustain that contention plaintiff relies upon the language of section 307 and also upon the reports of the committees of the Senate and the House recommending the passage of the amendment in question. In Senate Report 1128, 71st Cong., 2d Session, pp. 9, 10, it is said with reference to the amendment: "This incontestability would protect contracts where they were not applied for within the time limit required, where the applicant was not in the required state of health *or was permanently and totally disabled prior to the date of application,* or for any other reasons except those specifically mentioned in the statute." (Italics supplied.)

The language above quoted was incorporated in the report of the committee of the House recommending the passage of the amendment (Report No. 874, 71st Cong., 2d Session, p. 14).

In effect, plaintiff's counsel asserts that the legislative branch of the government has indicated in unmistakable terms that "incontestable," as the word appears in the amendment, is used and intended by Congress to be construed in a broader and more inclusive sense than when used in ordinary insurance policies, and, specifically, that Congress intended to prohibit the defense that the insured was totally and permanently disabled prior to the date of his application for insurance.

With this contention the court is unable to agree. In the first place, each of the matters enumerated in the amendment of July 3, 1930, when relied on as a defense, necessarily denies the existence of a valid policy or certificate of insurance. If the certificate was obtained by fraud, or if the premiums have not been paid, or if the holder was not a member of the military or naval forces of the United States, then the policy or certificate has no binding force whatsoever and is void. Manifestly, in the amendment in question Congress was dealing with defenses which have the effect of denying the very existence of a valid certificate or policy, not with defenses which expressly or impliedly, at least, admit the existence and validity of the policy at times material to the inquiry, but which deny that the risk asserted is covered by the policy. To repeat, each of the three defenses specified in the Act of July 3, 1930, above quoted (U. S. C., title 38, § 518 [38 USCA §

518]), negatives the existence of any valid policy, while the defense set up in the supplemental answer does not have the effect of denying the existence of a valid policy at some of the times material to this controversy, but is a denial that the policy ever matured while it was in force as a result (a) of the death of the insured, or (b) his becoming totally and permanently disabled during that time. There is, in my opinion, a lack of anything in the committee reports above referred to clearly evidencing an intention on the part of Congress to read into war risk policies or certificates generally a new risk which the government had not theretofore assumed; namely, insuring the holder against total and permanent disability *existing before* his application for insurance was made. In the second place, even if the government should prevail in this suit by showing that the alleged total and permanent disability of plaintiff occurred before, not during, the time the policy was in force, that would not mean that the policy was void, but simply that it had never matured in accordance with its terms as the result of the occurrence of a risk which it covered. Had plaintiff died while his policy was in force, the beneficiary or beneficiaries or his estate would have been entitled to recover on the certificate.

Furthermore, if plaintiff's contention is sound and his interpretation of the law correct, any applicant for war risk insurance, although already totally and permanently disabled at the time of his application, upon making that application and without the occurrence of anything further and without the performance of any other duty or obligation on his part, immediately became entitled to the payment of $10,000 in installments; in other words, that the government by merely inducting into the service a person then totally and permanently disabled, upon such person's application, became at once obligated to that person in the sum of $10,000, while to the ninety-nine out of every hundred remaining men in the service, the government was obligated under the policy to pay only in the event of their thereafter becoming totally and permanently disabled or dying while the policy remained in force by reason of the payment of the premiums required by law. Such a situation, it seems to the court, would be illogical and unsound and one that is not readily to be presumed in the absence of clear and convincing evidence that it was intended by Congress.

My conclusion is that neither the express

language of the Act of July 3, 1930, nor the reports of the committees of Congress recommending the passage of that act and giving reasons for their recommendation, assuming that it is proper here to consider those reports, show an intention on the part of Congress to have the government insure against any other risks than those of death or total and permanent disability occurring during the life of the policy.

It is further urged by plaintiff's counsel that section 200 of the World War Veterans' Act, as amended by the Act of July 3, 1930, § 11 (46 Stat. 995, U. S. C., title 38, § 471, 1931 Cum. Supp. [38 USCA § 471]), creates a conclusive presumption that plaintiff was in sound condition when he was examined, accepted, and enrolled for service and that defendant cannot now in any event defend on the ground that the alleged total and permanent disability occurred prior to plaintiff's application for insurance.

The Act of June 7, 1924, § 200 (43 Stat. 615), as amended by the Act of March 4, 1925, § 6 (43 Stat. 1304, U. S. C. title 38, § 471 [38 USCA § 471]), provided that, "For the purposes of this *section* * * * every such officer, enlisted man," etc., "shall be conclusively held," etc. The amendment of July 2, 1926, § 7 (44 Stat. 793), changed that to read: "For the purposes of this Act," etc., so that the act of 1926 has been construed to apply to war risk insurance as well as other claims. See Brandaw v. U. S. (C. C. A. 9th) 35 F.(2d) 181, 182.

But the Act of July 3, 1930, § 11 (46 Stat. 995, U. S. C., title 38, § 471, 1931 Supp. [38 USCA § 471]), again amended that section so that the provision in question now reads: "That for the purposes of this *section* (200) and section 304." (U. S. C., title 38, §§ 471 and 515, Supp. 1931 [38 USCA §§ 471, 515]), etc. Thus it will be seen that Congress by the amendment of July 3, 1930, has limited the presumption upon which plaintiff now relies, to claims arising under sections 200 and 304 and that neither of these sections applies to war risk insurance claims; that is to say, section 200 deals with compensation claims only, while section 304 deals with the reinstatement of lapsed and cancelled insurance certificates. See United States v. Searls et al. (C. C. A.) 49 F.(2d) 224, 226. In an able opinion Circuit Judge Parker, in discussing a similar contention, said:

"While we have great respect for the courts which have reached this conclusion, we cannot follow them in their interpretation of the statute. Conceding that the presumption as raised under the 1926 amendment is not confined to the purposes of section 200, it is confined to the *purposes of the act,* which provides for compensation, treatment, and reinstatement of insurance for veterans suffering from disabilities of service origin. It does not provide for the establishment of claims under policies as issued, nor does it attempt to regulate procedure in the courts on such policies. It would seem clear, therefore, that, if we look to the language of the act alone, there is nothing to create such presumption in the case of a claim under a policy, which is an entirely different matter from compensation or treatment of disabled veterans or the reinstatement of insurance which they have allowed to lapse.

"The same result follows if we look to the purpose of the statute and consider, as we must, its reason and spirit. In the case of a claim of disability under a policy, the question is not as to the origin of the disability, but as to whether it was total and permanent within the meaning of the policy while same was in force. The mere fact that it may have arisen from injury or disease having a service origin does not bear upon the right of recovery. The disability must have been total and permanent during the life of the policy, irrespective of the origin of the injury or disease causing it. And, on the other hand, if the disability was total and permanent, it makes no difference that it may not have been of service origin. There could have been no reason, therefore, in providing that, for the purposes of claims under policies, the diseases mentioned, in the act should be deemed to have originated in the service. We think it clear that the presumption was intended to relate to matters as to which the service origin of disability was a consideration of importance, that is to applications under the act for compensation or treatment or for reinstatement of insurance.

"There was error, therefore, in giving the special instruction requested by plaintiffs; and this error was accentuated when the learned trial judge remarked that under the instruction he could see nothing for the jury to do but find a verdict for plaintiffs. Whatever the origin of the disease causing disability, *plaintiffs were not entitled to recover unless the insured became totally and permanently disabled while the policy was in force.*"

The motion to strike out the supplemental answer is overruled.