**BOULGER v. UNITED STATES.**
**No. 3775.**

District Court, D. Massachusetts.
May 17, 1932.

Gobron, Havey & Cresswell, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and John Laurence Hurley, Sp. Asst. U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge.

This is an action to recover the benefits of a certificate of war risk insurance for $5,000. The petitioner alleges total and permanent disability while the contract was in force. The pertinent facts are these:

In August, 1917, Boulger came before the local draft board, and was accepted for military service. He was sent to the mobilization camp, Camp Devens, where, in October, 1917, he was rejected on account of disabilities. He was then subject to epileptic fits of the grand mal type, and while at Camp Devens had one or more convulsions. On July 30, 1918, he was again brought before the local board and was sent to a camp in Syracuse, N. Y., where he was accepted for limited service. He was, in November, 1918, transferred to Camp Humphreys, in Virginia, where he remained until the end of the war, when he returned to Camp Devens and was honorably discharged December 30, 1918. While at Syracuse and at Camp Humphreys he had several seizures of epilepsy. At Camp Humphreys he was in the hospital at least twice.

On September 2, 1918, he applied for $5,000 of war risk insurance which, for nonpayment of premium, lapsed on January 31, 1919. In this case the petitioner has the burden of proving that he became totally and permanently disabled while the contract was in force.

Following his discharge from the service, he was employed as a watchman at the Army Base from January to July, 1919. From August, 1919, to June, 1920, he was employed in a restaurant. In both of these positions he earned and received substantial wages. There is evidence to show that during the latter employment he was seized with con-

vulsions and that his work, was interrupted by reason of his affliction.

Early in 1921 he came under the care of the Veterans' Bureau, and beginning in February, 1921, he attended clinics at the Boston Psychopathic Hospital, where he was given treatment for epilepsy. In February, 1922, he underwent an operation which he thought had worked a cure of his trouble, and the hospital records show that from January, 1922, to May, 1925, there were no records of attacks. On April 21, 1922, he entered training at Fisher's Business College in Roxbury, and on September 18, 1922, entered Boston University, where he took a business course. He was at Boston University two years, and, with the exception of the period between December, 1922, and February, 1923, when he was out on probation, his records clearly show that his attendance was satisfactory and that his work improved. In September, 1924, he was given what is known as "placement training," first going as salesman with a motorcar company, but because of his affliction it was thought advisable for him to work where he would not be called upon to drive an automobile, so he was placed with the Eggleston Company as salesman, where he remained until January, 1925, and then he went with Cushman & Ferguson as a salesman of radio equipment. During his period of training he was receiving $100 to $135 a month from the government.

After the termination of the period of training which had been extended at his request, it does not appear that he has carried on any substantially gainful occupation up to the present time.

In 1926, for compensation purposes, he was rated as totally and permanently disabled.

Whether a person afflicted with epilepsy grand mal is totally and permanently disabled within the purview of the contract of insurance is a question which, in each case, must necessarily turn upon the particular facts of that case. Misenhelter v. United States (D. C.) 28 F.(2d) 771; Wood v. United States (D. C.) 28 F.(2d) 771, 772; O'Hora v. United States (D. C.) 49 F.(2d) 945; United States v. Ranes (C. C. A.) 48 F.(2d) 582.

In Wood v. United States, supra, the court observed: "Epilepsy is not one of the disabilities which are scheduled in the regulations as a total disability. This is correct, for epilepsy, even in the more serious stage known as grand mal, is not in every case a total disability within the meaning of the War Risk Act."

The totality and permanence of the disability shown to exist in the case at bar is doubtful in view of the record of employment and of training for nearly five years after the policy expired, and this with little interruption due to the petitioner's infirmities. It is not necessary, however, to reach a decision upon this aspect of the case, because there is another insurmountable obstacle in the way of a recovery on this contract. There was no disability during the period when the contract was in force which did not exist before the petitioner entered the service, or before he applied for and received war risk insurance. If his disability was total and permanent during the life of the contract, it was equally total and permanent before the contract became effective. The contract is a contract of insurance and not of indemnity, and the events insured against, namely, death or total and permanent disability, are events which must occur while the insurance is in force. In other words, if the total and permanent disability existed at the time the insured applied for insurance, that event would not be covered by the contract of insurance. Jordan v. United States (C. C. A.) 36 F.(2d) 43; Anderson v. United States (C. C. A.) 36 F.(2d) 45; Davis v. United States (D. C. E. D. Va.) 57 F.(2d) 871.

Furthermore, the certificate of war risk insurance is wholly a statutory contract, and, in order to define the rights of the insured, we must go to acts of Congress and to the reasonable regulations adopted pursuant thereto. White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530; United States v. Worley, 281 U. S. 339, 50 S. Ct. 291, 74 L. Ed. 887.

The Act of October 6, 1917, provided that the Director of the Bureau of War Risk Insurance, subject to the general direction of the Secretary of the Treasury, shall promptly determine upon and publish the full and exact terms and conditions of such contract of insurance. Act of Oct 6, 1917, § 402, 40 Stat. 409, as amended by Act of June 25, 1918, c. 104, § 21, 40 Stat. 615. The published terms and conditions of the contract contain the provisions that the contract of insurance shall be subject to all regulations then or thereafter adopted under authority of the act. The act of 1917 conferred upon the director full power and authority to make such rules and regulations not inconsistent with the act as might be deemed necessary or appropriate to carry out its purposes. Act Oct. 6, 1917, c. 105, § 2, 40

Stat. 398, adding § 13 to Act of Sept. 2, 1914, 38 Stat. 711, amended by Act May 20, 1918, c. 77, § 1, 40 Stat. 555. One of the regulations was that, "if the insured became permanently or totally disabled before this policy was applied for, it shall, nevertheless, be effective as life insurance, but not against such disability." This regulation has been held to be valid. Anderson v. United States, supra. With this conclusion I agree. The regulation became a part of the contract issued to the petitioner, and controls his rights under it. If the disability became total and permanent after the lapse of the policy, the plaintiff cannot recover, and, if he became totally and permanently disabled before the lapse of the policy, I have found, as a fact, that the disability was equally total and permanent before the policy was applied for; consequently, whichever view we take of the extent of the plaintiff's disability, there can be no recovery on this contract.

Judgment may be entered for the defendant.