735

## UNITED STATES v. KAMINSKY.*
### No. 6782.

Circuit Court of Appeals, Fifth Circuit.
April 20, 1933.

FOSTER, Circuit Judge, dissenting.

Lawton H. Ware, Veterans' Administration, of Jacksonville, Fla., Walter W. Sheppard, U. S. Atty., and Green B. Everitt, Asst. U. S. Atty., both of Savannah, Ga., and C. L. Dawson, Atty., Veterans' Administration, of Washington, D. C., for the United States.

A. B. Lovett, of Savannah, Ga., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action, begun in July, 1931, on a war risk insurance policy or certificate issued on May 11, 1918, to Jake Kaminsky, who was inducted into the military service of the United States on May 4, 1918, was honorably discharged from the Army on July 17, 1918, his certificate of discharge showing that it was granted because of defective mental development, and died in January, 1921, no payment of premium having been made after October 1, 1918. The petition sought judgment in favor of the insured's personal representative for total permanent disability from November 1, 1918, until the date of insured's death, and in favor of the beneficiaries named in the policy for the balance payable under the policy. Those amounts were

*Rehearing denied June 7, 1933.

awarded by the judgment rendered. The petition contained allegations to the following effect: While said contract of insurance was in force, and prior to November 1, 1918, the insured became totally and permanently disabled, within the meaning of said contract of insurance and the acts of Congress relating to the payment of premiums on said policy, and remained so disabled until the date of his death in January, 1921, as a result whereof the premiums on said contract of insurance payable after October 1, 1918, were waived. During the period in which premiums provided for by the policy were paid, and prior to November 1, 1918, the insured suffered a compensable disability for which compensation from the United States was not collected, the disability being the impairment of his mental condition to the extent that he was unable thereafter to follow continuously a gainful occupation, and at the time he suffered said compensable disability compensation to which he would have been entitled, and which was not collected, computed at the rate provided for by section 302 of the War Risk Insurance Act, as amended December 24, 1919 (41 Stat. 373), would have produced, if applied as premiums when due, insurance for the full term up to and including the date of his death. Those allegations were put in issue. It is to be inferred from allegations of the petition that claims of right to recover were based on the alleged existence of a total permanent disability of the insured while the policy was kept in force by the payment of premiums, and on the continuance of the policy in force until the death of the insured by the application to the payment of premiums of an uncollected amount payable to the insured by reason of his having suffered a compensable disability. There was evidence to the effect that the insured was admitted to an Army hospital on May 16, 1918, that he then was one-eighth mentally deficient, imbecile, and that he was unimproved up to and after the date of his discharge from the Army; and that a total and permanent disability of the insured which existed during and after the period when the policy was kept in force by the payment of premiums was due to mental deficiency. The court excluded testimony of a physician, who qualified as an expert in nervous and mental diseases, to the effect that if one who was drafted into the Army on May 4, 1918, was one-eighth mentally deficient when admitted to a hospital on May 16, 1918, and continued to be mentally deficient, imbecile, until July 17, 1918, that condition of mental deficiency could not have occurred during a few weeks prior to his entering the hospital, and must have existed over a period of years prior to his entry in the hospital on May 16, 1918. In submitting the case to the jury the court instructed them to the effect that the sole question for determination was whether or not Jake Kaminsky was totally and permanently disabled during the period when the policy was kept in force by the payment of premiums, that a verdict in favor of the appellees should be rendered if he was so disabled during that period, and, in referring to the above-mentioned ruling excluding testimony, stated, "that the right to recover exists if that total disability existed, wholly independent of what caused it, and whether or not either in part or in whole it existed prior to his enlistment in the Army."

The contract sued on was entered into pursuant to the provision of section 400 of the War Risk Insurance Act (40 Stat. 409) "that in order to give to every commissioned officer and enlisted man * * * in active service under the War Department * * * greater protection for themselves and their dependents * * * the United States, upon application to the bureau and without medical examination, shall grant insurance against the death or total permanent disability of any such person in any multiple of $500 and not less than $1,000 or more than $10,000 upon the payment of the premiums as hereinafter provided." The expressed purpose of the provision was to authorize the grant of insurance for the protection of the insured and their dependents. The language used shows that the contract authorized was intended to be one of insurance, within the usual meaning of that word (14 R. C. L. 839), whereby, for a consideration, money is promised to be paid upon the happening, after the promise is made, of a specified event. That language cannot fairly be regarded as consistent with the existence of an intention to authorize the creation of a liability for a loss or damage resulting from an event which occurred or a condition which existed before the insured was employed in the military or naval service of the government. Manifestly what was intended to be provided for was protection against risks arising after the insured entered the service, not indemnity for loss or damage due to what had occurred before he entered the service. The following provision of the immediately succeeding section (401) of the War Risk Insurance Act shows that insurance of the same kind was intended to be granted in favor of specified persons in the active service who became totally and permanently disabled or

died without having applied for insurance: "Any person in the active service on or after the sixth day of April, nineteen hundred and seventeen, who, while in such service and before the expiration of one hundred and twenty days from and after such publication, becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, payable to such person during his life in monthly installments of $25 each." That language plainly negatives the conclusion that the insurance provided for was intended to cover a total permanent disability which existed before the insured entered the service any more than it would cover a death which had occurred before the insurance was to be deemed to have been applied for and granted. To hold that a policy applied for and issued covers a permanent total disability which existed before the insured entered the service, but that the insurance which, under the quoted provision, is to be deemed to have been applied for and granted does not cover such permanent total disability, would involve a discrimination not justified by the language of the statute. A provision for the reinstatement of lapsed or canceled insurance in favor of insured who are physically disabled is made subject to the condition "that the applicant's disability is the result of an injury or disease, or of an aggravation thereof, suffered or contracted in the active military or naval service during the World War." 38 USCA § 515. The quoted requirement is additional evidence that the lawmakers, in providing for insurance against total permanent disability, had in mind only such disability as might occur after the insured entered the service, and not a total permanent disability which existed before he entered the service.

■ A phase of the evidence indicated that, due to mistakes or blunders of others, a mental defective, an imbecile, got into the Army and obtained a war risk insurance policy. The court's ruling was to the effect that under a policy issued in such circumstances liability was incurred by reason of the insured's total permanent disability due to his mental deficiency and which existed before he entered the Army. Plain language would be required to justify giving to the statute the effect of authorizing the granting of insurance against the total permanent disability of one who, when so disabled, got into the Army by means of the draft, and who, because of such disability, was promptly discharged. The statute contains no such language. The conclu-

sion that the insurance authorized to be granted does not cover such disability is supported by the decisions of several courts. Anderson v. United States (C. C. A.) 36 F. (2d) 45; Jordan v. United States (C. C. A.) 36 F.(2d) 43, 44, 73 A. L. R. 312; Davis v. United States (D. C.) 57 F.(2d) 871; Boulger v. United States (D. C.) 60 F.(2d) 560; Schmidt v. United States, 63 F.(2d) 390, Eighth Circuit Court of Appeals, January 13, 1933. As said in the opinion in the case of Jordan v. United States, supra, "what is provided for is a contract of insurance against something that may happen, and not of indemnity for something which has already happened."

■ The language of the provision (38 USCA § 518) making policies incontestable except for fraud, nonpayment of premiums, etc., is entirely consistent with the absence of an intention to authorize insurance against a total permanent disability which existed before the insured entered the service. The fact that a policy cannot be questioned or avoided by reason of the insured being in an unsound physical or mental condition at the time it was applied for and issued does not have the effect of making it cover a risk which the law providing for the insurance granted does not authorize to be insured against. However immune from contest a policy may be, it can cover only the risks which the statute authorized to be insured against. The fact that a policy is not subject to be contested by reason of the insured being totally and permanently disabled at the time it was issued (which condition may cease to exist, 38 USCA § 512), is consistent with that disability being one which the statute does not authorize to be insured against. The incontestability provision does not prevent the insurer resisting the claim asserted on the ground that the total permanent disability suffered by the insured, being one which existed before he entered the Army, was not one covered by the policy sued on. Such a defense is not a contest of the policy, but is a denial that under the terms of the policy the asserted liability was incurred. The incontestability of a policy does not make the insurer liable for the promised payment in the absence of the happening of an event insured against. Sanders v. Jefferson Standard Life Ins. Co. (C. C. A.) 10 F.(2d) 143. The statute does not forbid a contest of a policy for nonpayment of premiums. The policy sued on was subject to contest on that ground if, when the payment of stipulated premiums was discontinued, the insured had not become totally

and permanently disabled within the meaning of the policy and the law governing it.

The testimony which was excluded in connection with admitted evidence tended to prove that the total permanent disability of the insured which existed during and after the expiration of the period when the policy was kept in force by the payment of premiums existed before and at the time of the insured's entry into the Army. By the ruling in question a war risk insurance policy issued to one who within a few days after he was brought into the Army by the draft was discovered to be an imbecile was given the effect of making the insurer liable by reason of the insured's total permanent disability due to his mental deficiency, though that disability existed before he entered the Army. We are of opinion that the statute authorizing the grant of insurance did not authorize insurance against a total permanent disability which existed before the insured entered the military service, or give to the existence of such a disability the effect of dispensing with the payment of premiums. The testimony excluded, in connection with admitted evidence, negatived the conclusions that, within the meaning of the policy sued on, the insured became totally and permanently disabled while that policy was in force, and that a right to recover on the policy accrued before the payment of premiums was discontinued. An effect of the ruling in question was to deprive the appellant of the benefit of evidence tending to prove the nonexistence of a valid excuse for discontinuing the payment of premiums or of a liability asserted by the suit. We are of opinion that that ruling was harmfully erroneous.

It appears from the record that the liability adjudged was based upon a finding of the existence, while the policy was kept in force by the payment of premiums, of a total permanent disability of the insured. The record does not show that the court ruled on the question whether a disability of the insured which existed before he entered the Army and was not aggravated during his service was a compensable one within the meaning of the statute (38 USCA §§ 471, 516) providing for the application to the payment of premiums of an uncollected amount which was payable to the insured on account of a compensable disability.

Because of the above-mentioned error the judgment is reversed, and the cause is remanded, with direction that a new trial be granted.

Reversed.

FOSTER, Circuit Judge (dissenting).

This case presents two questions both of which I consider to have been wrongfully decided by the majority.

1. The assignment of error sustained was that the District Court erred in rejecting certain material evidence of Dr. Ralph Green, a witness for the United States, in substance as follows, to wit: "That defective mental development is congenital; that imbecility is usually congenital; that in the opinion of the witness, based upon the Army medical record of the veteran Jake Kaminsky, that Jake Kaminsky was a high grade moron who developed normally to a mental age of about 12 years, and whose mental development thereafter remained stationary."

This evidence was of doubtful value as tending to show that Kaminsky was totally and permanently disabled before being inducted into the Army and purely cumulative. There was abundant evidence in the record, though disputed, to the same effect. The undisputed evidence in the record tended to prove that when drafted Kaminsky was 23 years of age, strong physically, and healthy. He had been continuously engaged in a substantially gainful occupation as a salesman. The record leaves no doubt that at the time of his discharge from the Army he was in poor health and totally and permanently disabled because of his mental condition. Premiums on the policy had been paid, keeping it in force until December 1, 1918, more than two months after his discharge.

The average twelve year old boy is far from being an imbecile and no doubt thousands of such boys are successfully earning a living. It is to be presumed that as a private Kaminsky, though a high-grade moron, could obey simple orders and perform simple duties of a soldier. Before being inducted into the Army he was given a searching physical examination. If he was not mentally and physically fit he ought not to have been enlisted. The presumption is to be indulged that he was mentally and physically sound for the purpose of performing his duties as a soldier. Had the excluded evidence been admitted, there is no doubt in my mind that the jury would have rendered the same verdict. That error, if any, was harmless and did not affect the substantial rights of the parties. To reverse the case simply entails delay to appellees in collecting a just claim and additional expense to the government.

2. The District Court excluded the evidence of Dr. Green on the ground that the

policy was incontestable from date under the provisions of the Act of July 3, 1930, § 24 (38 USCA § 518). Under the provisions of the said act all policies of war risk insurance theretofore issued were made incontestable from the date of issuance except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States. The section was made retroactive as of April 6, 1917. It seems that the majority of the court would interpolate another exception into the statute and, in order to accomplish this, the theory is adopted that a defense based on the ground that permanent and total disability of the insured existed before he entered the army is not a contest of the policy. The unsoundness of this theory is demonstrated by merely stating it as the urging of any defense that would defeat a recovery would necessarily be a contest of the policy.

It would further seem that, as a second thought, the majority has adopted the theory that the contest was based on the ground that the policy had lapsed for nonpayment of premiums as appellees had sought to show that Kaminsky was entitled to compensation during his life, which automatically applied to premiums would have kept the policy in force until his death, and this claim had been denied by the Veterans' Bureau. It is true that this theory of appellees is disclosed by the petition, but it is immaterial that they may have been mistaken in the theory of the case, as the answer admits that the policy was issued conditioned to pay the insured $57.50 per month in the event of his permanent and total disability while the insurance was in force and to pay each of the beneficiaries $28.75 per month in the event of his death. Under the pleadings the District Court was justified in submitting the case to the jury on the theory that the policy had matured and no further premiums were due if Kaminsky was totally and permanently disabled at the time of his discharge.

The provisions of the act of 1930 are so plain as to hardly require construction, but if they do the committee reports submitting the bill may be looked to for light. Under the terms of the section as originally enacted policies did not become incontestable until six months after issuance. Act June 7, 1924, § 307 (38 USCA § 518). Construing that section the Comptroller General had ruled, in effect, that the existence of permanent and total disability when originally applying for insurance, or reinstatement thereof, might be set up as a defense at any time. See the following cases: Mabry W. Woodall, Jan. 16, 1930, 9 Comp. Gen. 291; Philip McNish, Mar. 9, 1928, 7 Comp. Gen. 551; Marion Artley, Jan. 23, 1929, 8 Comp. Gen. 387. There are other rulings of the Comptroller General to the same effect. The committee reports, Senate Report 1128, and House Report 874, 71st Congress, 2d Session, in practically identical language, say this: "This incontestability would protect contracts where they were not applied for within the time limit required, where the applicant was not in the required state of health, or was permanently and totally disabled prior to the date of application, or for any other reason except those specifically mentioned. It is appreciated that this is a broad provision, but it was felt that it was necessary in order to do justice to the veterans, to place this insurance on a parity with commercial insurance from a stability standpoint, and to overcome decisions of the Comptroller General which practically nullify the section as it now exists."

There is no doubt in my mind that in enacting the statute Congress intended to prevent metaphysical rulings by bureaucracy and to avoid just such controversies as that herein presented. In my opinion it was clearly the intention of Congress to close the door to any inquiry as to the mental and physical condition of the insured prior to the issuance of the policy of war risk insurance. This conclusion finds support in the well-considered opinion of Hicks v. U. S., 65 F.(2d) 517, decided January 10, 1933, Fourth Circuit, which seems to have been ignored by the majority opinion. The District Court was right in excluding the evidence of Dr. Green under the provisions of the statute and no error resulted therefrom.

For these reasons I respectfully dissent.