## HICKS v. UNITED STATES.

### No. 3363.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1933.

On Rehearing June 15, 1933.

Jacob L. Morewitz, of Newport News, Va. (H. H. Kanter, of Norfolk, Va., and Morewitz & Morewitz, of Newport News, Va., on the brief), for appellant.

William P. Boehmer, Asst. U. S. Atty., of Norfolk, Va., and Wilbur C. Pickett, of Washington, D. C., Atty., Veterans' Administration (Paul W. Kear, U. S. Atty., of Norfolk, Va., on the brief), for the United States.

Before PARKER and NORTHCOTT, Circuit Judges, and MEEKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal in a war risk insurance case, in which verdict was directed for the government. It presents two questions for our consideration: (1) Whether there was sufficient evidence to take the case to the jury on the question as to whether the insured became totally and permanently disabled before the policy lapsed for nonpayment of premiums; and (2) whether insured is precluded from recovery on the ground that he was totally and permanently disabled at the time the policy was applied for.

On the first question the learned judge below was of opinion that the evidence was insufficient because it did not sufficiently establish the cause of insured's alleged disability and also because, in his opinion, the jury were left to speculate as to its permanency. It is not fatal to insured's case, however, that he is not able to establish the cause of his disability, if it in fact exists. The question is not what caused the disability, but whether it became total and permanent within the life of the policy. U. S. v. Searls (C. C. A. 4th) 49 F.(2d) 224. Evidence as to cause is pertinent, for it may throw much light upon the questions as to totality and permanency; but, if the disability is shown to be total and permanent by satisfactory evidence, failure to establish its cause is not necessarily fatal, although a proper matter for the consideration of the jury.

And we cannot agree that the evidence left the permanence of the disability as a mere matter of speculation. On the contrary, we think that it was sufficient, if believed, to establish that the disability was both permanent and total within the meaning of the policy. Plaintiff testified that about a week after his enlistment in the army he was stricken with appendicitis and that an operation was performed on him from which he has never recovered. He was discharged from the army as disabled on November 4, 1918; and he testifies that he has ever since been unable to work. He was rated as disabled by the Veterans' Bureau shortly after his discharge, and at the time of the trial below had been for three and a half years an inmate of a soldiers'

home. In 1924 he attempted to take vocational training, but testifies that this was discontinued on account of disability. He testified: "I have been in my present physical condition ever since before the date I was discharged from the army. It was a good while after I was operated on before I got so bad." Regarding his physical condition and consultation of physicians, he said: "When I got out of the army I got disability pay from the government which started from November 5, 1918. I was examined by Dr. Morris in Atlanta, Georgia, a private physician, who sent my papers in. My disability pay started around a month and probably a little longer after Dr. Morris examined me. This examination took place immediately after I left Camp Gordon, when I went to Atlanta and started taking treatments from Dr. Morris. I saw Dr. Morris and was examined by him the same day that I left Camp Gordon. I don't remember the exact amount of time that I continued taking treatments but it cost me almost $200.00 of my own personal money. * * * I have taken treatments from quite a few doctors since I discontinued with Dr. Morris in Atlanta. When I went into the service I was already married. Since leaving the service I have been in several hospitals, including the Government hospital at Johnson City, Tennessee. I stayed there about a month within a short time after leaving the service, and I was also a patient, on two different occasions, in the Government hospital in Oteen, North Carolina. While there I was treated for tuberculosis for one thing. It is very hard to find out what your disabilities are. They won't tell you. I stayed at Oteen for about 2½ months the first time, I think. I went home on a five day pass and I was so sick I could not get back. I did not go back again but stayed at home and took treatments there. Afterwards I went to Oteen again and stayed there around three months the last time. Since I have been at the Soldiers' Home, in Hampton, I have been in the hospital for a time or two, staying there about thirty days on one occasion. One time while I was in New York I got tired fooling with the Government and went to the Bellevue hospital in that city. In addition to my nervous trouble, heart trouble and appendicitis, I have a hernia. It gradually came on me after I was discharged. I think it was due to my weak condition after I was discharged from the service."

No physicians were introduced to corroborate plaintiff, but this went to the weight and not to the sufficiency of his testimony.

Cf. Carter v. U. S. (C. C. A. 4th) 49 F.(2d) 221, 224. The fact that he was discharged as disabled, that he was repeatedly admitted to government hospitals for treatment, and that he was finally admitted to a soldiers' home ten years after discharge, shows that there was substance in his claim of total disability. The fact that the disability had continued for so great a length of time was substantial evidence that it was of permanent character. But, in holding that there was evidence to go to the jury on this question, we do not, of course, mean to hold that plaintiff is necessarily entitled to recover, but merely to say that, upon the evidence appearing in the record before us, he was entitled to go to the jury. See Garrison v. U. S. (C. C. A. 4th) 62 F.(2d) 41. Upon the further hearing of the case, the government may introduce such evidence of the physical condition of plaintiff or of work done by him as, unexplained and uncontradicted, may call for the direction of a verdict in behalf of the government. U. S. v. Harrison (C. C. A. 4th) 49 F.(2d) 227; U. S. v. Diehl (C. C. A. 4th) 62 F.(2d) 343. But we think that the evidence contained in the record constitutes, unexplained and uncontradicted by a work record or other evidence of like character, some evidence of total and permanent disability for the consideration of the jury.

On the second question, the contention of the government is that there is no showing that the insurance was applied for before plaintiff became disabled. We do not think, however, that this position is open to the government. Its policy promises to make certain payments in the event of death or disability; and to allow it to deny liability on the disability feature of the policy on the ground that insured was disabled when the policy was applied for is to allow it to contest liability on the policy to the extent of the disability feature. This is forbidden by statute. 38 USCA § 518. The pertinent portion of the statute cited is as follows: "All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, and subject to the provisions of section 447 of this title. * * * "

The government relies upon a regulation of the Director of War Risk Insurance providing that policies shall contain the provision that "if the insured became totally and permanently disabled before this policy was applied for, it nevertheless shall be effective as life insurance, but not against such disability," and contends that a disability arising before the application for the policy was not a risk insured against. This position would be sound, but for the provisions of the statute quoted above, which were enacted after the adoption of the regulation. We think that the effect of the statute is to preclude the government from denying liability on the policy on account of anything occurring prior to its issuance, except upon the grounds expressly mentioned therein. And that this was the intention of Congress in the enactment of the amendment of 1930 appears from the reports of the Committees of the House and Senate of the 71st Congress which considered the matter. Senate Report 1128, pages 9 and 10, contains the following statement: "Section 24 amends section 307, which relates to the incontestability of insurance contracts. The purpose is to make all contracts or policies of insurance incontestable from date of issuance, reinstatement, or conversion, for all reasons except fraud, nonpayment of premiums, or that the applicant was not a member of the military or naval forces of the United States. This incontestability would protect contracts where they were not applied for within the time limit required, where the applicant was not in the required state of health, or was permanently and totally disabled prior to the date of application, or for any other reasons except those specifically mentioned in the statute. It is appreciated that this is a broad provision, but it was felt that it was necessary in order to do justice to the veterans, to place this insurance on a parity with commercial insurance companies from a stability standpoint, and to overcome decisions of the Comptroller General which practically nullify the section as it now exists."

See, also, House Report No. 874, which deals with the same matter and uses practically the same language.

We have carefully considered the able presentation of the opposite view contained in the opinion of the judge below in the case of Davis v. U. S., 57 F.(2d) 871, but we cannot concur in his conclusion. He reasons that the regulation of the director takes disability out of the coverage of the policy where such disability existed when the policy was applied for, and that the statute makes the policy incontestable only as to the other risks covered by it. The answer to this is that the policy covers disability as well as death, and to per-

mit this force to the regulation is to permit contest as to disability in the teeth of the statute which says that the policy shall be incontestable for any cause except those enumerated.

It is suggested that to permit a recovery for total and permanent disability where the disability existed at the time of the application for the policy is to hold that an insured, by merely making application and without further duty or obligation on his part, should become entitled under the policy; and if is argued that it is unreasonable that any such result should have been intended. But there was nothing unusual in Congress' providing disability insurance for men who had become disabled in the service, but who had failed to apply for insurance prior to their disability or had failed to make application within the time limited by the act. The original act, Act Oct. 6, 1917, § 401, 40 Stat. 409, provided that application for insurance must be made within 120 days after the publication of the terms and conditions of the policy or within 120 days after enlistment, but that persons in the service who died or became totally and permanently disabled within the 120 days' period after publication of the order should be deemed to have applied for insurance payable in monthly installments of $25, even though they had made no application at all. A proviso in the Act of December 24, 1919, § 12, 41 Stat. 374, 375, provided that where, between the declaration of war and the signing of the armistice, application for insurance had been made and accepted and a policy issued and premiums collected, the policy should be deemed valid, even though application had not been made within the time limited by the act. It was in line with this liberal policy to declare that any policy of insurance applied for and issued should be incontestable from the date of issuance, so that soldiers who had become disabled while in the service of the government should be entitled to recover under their policies, irrespective of whether the disability occurred before or after the policies were applied for. It was a reasonable presumption that soldiers and sailors were not totally and permanently disabled at the time they were inducted into military or naval service of the United States; and it was not an unreasonable provision of law that policies issued to them by the government should not be invalidated as to any of their provisions by disability which occurred after induction into service, even if before application for the policy.

We have examined the cases of Jordan v.

U. S. (C. C. A. 9th) 36 F.(2d) 43, 73 A. L. R. 312, and Anderson v. U. S. (C. C. A. 9th) 36 F.(2d) 45. Both of these cases, however, were decided before the amendment to the statute made by the Act of July 3, 1930, 46 Stat. 1001 (38 USCA § 518); and, on the peculiar facts of the Jordan Case, it was held that in that case the incontestable provision of the statute as it then was had no application.

On the second question, therefore, our conclusion is that by reason of the incontestable provision of the statute, the government may not contest liability on the disability feature of a war risk insurance policy on the ground that the insured received the disability prior to application for the policy, but solely on the grounds of fraud or nonpayment of premiums, or on the ground that the insured was not a member of the military or naval forces of the United States.

For the reasons stated, the judgment of the court below is reversed, and the case is remanded for a new trial.

Reversed.

### On Rehearing.

A rehearing was granted in this case on the second point covered by the opinion in view of the fact that a contrary conclusion had been reached by a number of courts on the same point. Schmidt v. U. S. (C. C. A. 8th) 63 F.(2d) 390; U. S. v. Stevens (C. C. A. 8th) 64 F.(2d) 853; Boulger v. U. S. (D. C. Mass.) 60 F.(2d) 560; Stavros v. U. S. (D. C. W. D. Wash.) 3 F. Supp. 213. Upon further consideration in the light of these decisions, and of the decisions of the Comptroller General toward which the change in the incontestable provision of the statute was directed, we have reached the conclusion that we were in error in thinking that the incontestable provision was intended to preclude the government from asserting that, where the insured was totally and permanently disabled at the time of application, the policy as issued insured only against death and not against disability.

As stated in our former opinion, the regulation relied on by the government, providing that a policy issued to one totally and permanently disabled should be effective as life insurance but not as insurance against disability, was undoubtedly a valid regulation and entered into and became a part of the insurance contract. And the purpose of Congress in enacting the incontestable provision of the statutes, we think on further consideration, was not to enlarge or extend the coverage of policies issued under this reg-

ulation to persons who were totally and permanently disabled at the time of application, but to prevent, among other things, the forfeiture of reinstated or converted policies on the ground of the prior disability of the insured. An examination of the rulings of the Comptroller General shows that reinstated policies had been held void for this reason; and, as pointed out by Judge Fee in the Stavros Case, it was to this that the committees of Congress were referring in their report from which we quoted in our former opinion.

█ It follows that one claiming on the ground of total and permanent disability under a policy such as here involved must show that he became totally and permanently disabled during the life of the policy, and his right to recover on such ground will be defeated if it appears that the total and permanent disability existed when the policy was applied for. On the record before us it does not clearly appear when the total and permanent disability of plaintiff arose, if indeed it existed, and the date of the application for the policy is not shown. While ordinarily a verdict should be directed for the government if the plaintiff does not sustain the burden of showing that the disability arose during the life of the policy, the verdict for defendant in this case was directed on another ground which we have held to be erroneous; and, as we have held that there was some evidence to go to the jury on the question of total and permanent disability, we think that plaintiff should have the opportunity of showing, if he can, that same arose during the life of the policy. The judgment of the court below will accordingly be reversed and the case will be remanded for a new trial.

Reversed.