## UNITED STATES v. CHANDLER.
### No. 7618.

Circuit Court of Appeals, Fifth Circuit.
May 8, 1935.

Jim C. Smith, U. S. Atty., of Birmingham, Ala.

W. M. Rayburn, of Gadsden, Ala., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On July 4, 1933, plaintiff brought this suit on two policies of government insurance, on which premiums had been paid to May, 1932, and August, 1933, respectively, into which on June 1, 1927 he had converted his war risk insurance policy. The claim was that in December, 1930, he had become totally and permanently disabled while his policy was in full force by payment of premiums. Trial to a jury resulted in a verdict and judgment for plaintiff. This appeal presents only the one question, whether a verdict should have been directed on defendant's motion. Unlike those plaintiffs who in cases brought long after policies have lapsed have the heavy burden by projecting backward, of making the present and the long past seem the same, plaintiff here is concerned only with showing that he recently became, and now is, totally and permanently disabled. He urges that he has fully sustained this lighter burden. The defendant argues that plaintiff's proof does not, as plaintiff claims for it, make out a case of total and permanent disability coming on in 1930; that, if it makes out any case of total and permanent disability, it makes it out as of the time he reinstated his policy in 1925; that he may not recover on such a showing, for to do so will be to recover for a contingency which, before the policy was written, had already come to pass. United States v. Kaminsky (C. C. A.) 64 F.(2d) 735; Hicks v. United States (C. C. A.) 65 F.(2d) 517; United States v. Stevens (C. C. A.) 64 F.(2d) 853; United States v. Adams (C. C. A.) 70 F.(2d) 486. He argues, in short, that the proof appellee makes shows no difference in his condition now from what it was in 1925, and that he thus finds himself in the dilemma of claiming for a risk which, because the contingency had already happened before the policy was reinstated, could not be insured against, or of claiming for a disability which has not yet accrued.

We do not agree with defendant that it may, in this proceeding, claim that plaintiff was totally and permanently disabled in 1925, when his original policy was reinstated, and that because he was he cannot recover now. We think the issuance of that policy is such an affirmation that there was a risk to be insured against as that defendant may not, on this evidence, assert that the risk did not exist, or defeat recovery on these policies on the ground of an already existent disability without pleading and proof of fraud in securing the reinstatement. We think it clear that plaintiff can recover on the reinstated and extended policies upon proof that in December, 1930, he was totally and permanently disabled, and that he may not, absent proof of fraud in procuring his reinstatement, be defeated of recovery by the showing the proof makes that there was a disablement existing when the policies were reinstated. We agree with the defendant, though, that the proof makes out no case of total and permanent disability. It shows at most a partial disability; a partial dis-

ability not permanent, but subject to reduction. Plaintiff's proof consisted of his own testimony and that of four physicians; defendant's, of that of six physicians and one witness who had worked with plaintiff. The physicians' testimony may be thus summarized:

For plaintiff, Dr. Burns, a general practitioner, testified that he had examined plaintiff once or twice in 1928, and that he considered his condition bad; that he found what he thought was pulmonary tuberculosis, with possibly tubercular throat. He found an enlarged heart, and evidences of a gunshot wound in the left leg. He gave it as his opinion that plaintiff was and is permanently and totally disabled, and that it is reasonably certain that the disability would continue, and possibly grow worse; that he thought a man in that condition should not work. On cross-examination he testified that his diagnosis of tuberculosis had been entirely from clinical observation; that he had made no microscopic examination of the sputum; that he did not know whether tuberculosis was curable or not, it would be according to a man's make-up; that the gunshot wound was entirely healed, leaving only a partial disability. Dr. Leach, a general practitioner, testified that he had examined Chandler several times, not for the purpose of healing him medically, but only in connection with his claim for compensation; that he went over him pretty thoroughly the day before the trial, and found him "sixteen to eighteen pounds underweight, pulse 80, temperature normal. A case of arrested tuberculosis. Has not had any blood in his sputum since 1931. This shows that the cavities in his lungs are pretty well healed, what we call an arrested case, not an active condition now." A history he gave of his case shows that he complained of lung trouble in 1920 and went to a sanitarium in Johnson City in 1925. "I examined him two or three years ago for a heart condition. His heart at this time is improved. I do not think Mr. Chandler can ever make a living by doing the usual work that men in the ordinary walks of life have to do. He is totally disabled from doing the usual kinds of work men do that is physical labor. He is not totally disabled from all work. I think he could do some outside work, like operating a filling station, or furniture repairing, or making door screens and windows." On cross-examination he testified that he had made a statement in September, 1933, that "he did not believe Chandler was suffering any impairment of mind or body which made him disabled from working; in my opinion he is a chronic malingerer." "I mean by that that he is a hypochondriac; he is inclined to magnify his troubles." To the question, "Would you advise against continuous employment," he answered, "I advise moderate work. A man in his condition should do moderate work." Dr. Nicholson testified he had examined Chandler and found his throat in a pale condition. "I considered his throat condition tubercular and that it would not get any better."

Dr. Rawles testified that Chandler had been under his care practically ever since he came from the army. He testified that he did not depend on stethoscopic examination; he found the germs by sputum test. "In my opinion throughout this time he was suffering with pulmonary tuberculosis. Based on my numerous examinations I would consider him totally and permanently disabled. I have so considered him since 1930. At different times he has had active tuberculosis. All these chronic cases have periods of inactivity. In my opinion his condition will continue. I consider him permanently disabled now. Some cases get well but his case is advanced." On cross-examination he said: "I have been treating him for about twelve years. I do not remember the dates. I diagnosed him as having tuberculosis the year after he came home. It was active at that time. I consider him active now. I don't know whether it was active in 1924. I think I can say his condition is total and permanent. I say that because he has had chronic tuberculosis for fourteen years. On March 7, 1925, I found him in the same condition which I now say is permanent and total, except he has had ten years more of it."

Chandler, the plaintiff, testified that he had been examined all along since he had left the service, probably in 1920 or 1921; that he had received a gunshot wound in the calf of his leg; that his leg goes to sleep at times; that he was treated in 1922 for lung disability. "The government diagnosed it as tuberculosis in 1925." "When I came out of the army I started to work and worked a little up to December 1930 at odd jobs. I have probably earned ten dollars or more since I went down in 1930. I have shortness of breath and can't hold out. I have spent the biggest part of the day since 1930 in bed, lying down. I have

now and did have in December, night sweats; have had these for several years even in winter. My throat stays sore"; that he has not, for a couple of years or better, spit up anything. "I cannot stoop over and pick up anything of any weight at all. I have a hacking cough all the time, and have had for years. I have hung around Laverty's Music House since 1930 and tried to fix radios and victrolas a couple of years ago. I sat down to do that. That took just a few minutes. I have tried to work and would just give out. I haven't worked any since 1930; I haven't been able. I worked for the Laverty store down there probably seven years and quit in 1930."

For defendant, Dr. Long testified that the leg wound had entirely healed. Dr. Dobyn testified that he had examined plaintiff in 1931; found chronic tonsilitis and chronic appendicitis. "That was all the ailments I discovered. I made a complete examination of him; at that time he was not permanently or totally disabled from performing lighter occupations. Plaintiff was under my examination three days. I made a stethoscopic examination. I did not make a sputum test. The treatment for tuberculosis is rest. It is possible that a man might have a minimal amount of tuberculosis and I might have overlooked it. I would say that the test I made is as accurate as a sputum test because a sputum test is not positive by any means." Ruby Brown testified: "I know the plaintiff, have known him since he started working at Laverty's in 1928. He quit in 1930. He worked regular at that time up to December and has not worked since." Dr. Gaines testified: "I have specialized in diseases of the chest for eleven years. I was on the Board that examined him. We did not find any tuberculosis, either on physical examination nor by a study of X-rays. We found no ailments which would render him unable to follow a gainful occupation." Dr. Kesterton, a specialist in diseases of the chest, testified that he had made observations of Chandler beginning February 9 and ending February 26, 1931; had made a complete chest examination and found no ailment which would prevent his following a substantially gainful occupation. Dr. Carman, a chest specialist, after a thorough examination, found no evidence of tuberculosis nor any evidence of any other disease which would prevent his making his living by working. Dr. Wood, a specialist in nervous and mental diseases, testified that when he examined Chandler, who gave him a history of some sort of convulsive attacks, he found a mild degree of hysteria, not in need of hospital treatment, mentally competent. He recommended that he resume his occupation of piano repairman. "My examination did not disclose any evidence of tuberculosis or epilepsy, or any other disabling disease."

This evidence, taken altogether, putting aside the medical opinions, on the one hand, that he is, and on the other, that he is not, totally and permanently disabled, proves nothing except that there is a conflict of medical opinion on the ultimate issue in the case, whether plaintiff was, within the meaning of the law or the policy contract, totally and permanently disabled. Plaintiff's own testimony of his physical condition, taken with that of the physician testifying most favorably for him, that the ailment he is suffering from now is the one he has had for over ten years, and the testimony that during the greater part of that time he has been working with reasonable continuity, does not make out a case of total and permanent disability. It rather confirms the testimony of the defendant's witnesses that such tuberculosis as he had has become completely arrested. Outside of the opinion of one of plaintiff's physicians that he is totally and permanently disabled, there is nothing in the record to take the case to the jury. This opinion may not be looked to to do so. Covering and comprehending the whole case, including in it an opinion on matters not matter of expert opinion at all, this opinion is not evidence; it is a finding on the very issue the jury was drawn to try. Miller v. United States (C. C. A.) 71 F.(2d) 361, 362, affirmed, 55 S. Ct. 440, 79 L. Ed. ——; United States v. Spaulding, 293 U. S. 498, 55 S. Ct. 273, 79 L. Ed. ——; Hamilton v. United States (C. C. A.) 73 F.(2d) 357; United States v. Steadman (C. C. A.) 73 F.(2d) 706.

The verdict should have been directed for defendant. Because it was not, the judgment is reversed, and the cause remanded.