## McCORMACK v. UNITED STATES.
### No. 258.

Circuit Court of Appeals, Second Circuit.
July 25, 1933.

George Z. Medalie, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Nelson D. Spiro, of New York City (Lawrence E. Goldman, of Kansas City, Mo., of counsel), for plaintiff-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought under the provisions of section 19 of the World War Veterans' Act of 1924, as amended (38 U. S. C. § 445 [38 USCA § 445]). Edward A. McCormack was a soldier in the World War, who enlisted in the army on July 16, 1917, and became a private in Company C, 165th U. S. Infantry. He was killed in action overseas on October 15, 1918.

According to the records of the War Department, he was absent from his regiment, without leave, from September 1 to October 14, 1917, and later from October 25, 1917. His mother, brother, and sister testified that he was with the 69th New York Regiment of the National Guard on the Mexican border in 1916 and until March, 1917, when that regiment returned to the United States. He was mustered out of service on March 9 of that year. During the greater part of the twelve months succeeding his return from Mexico, their testimony indicated that he lived at home in New York City and for about six

months of the time worked for the New York Central. He seems to have actually rejoined his regiment (after his absence without leave) on June 16, 1918. On the 18th of June of that year he filed an application for war risk insurance in the sum of $10,000 payable to his mother, the plaintiff, Mary McCormack. The application contained the clause: "I authorize the necessary monthly deduction from my pay, or, if insufficient, from any deposit with the United States, in payment of the premiums as they become due, unless they be otherwise paid." The application was signed at Camp Merritt on June 18, 1918, and witnessed by the commanding officer. On the second page of the instrument was the statement subscribed by the commanding officer: "Charge of premium $6.50 will be made by me monthly, beginning with the month in which application is dated." Appended to this page were the words in the officer's handwriting: "This charge $6.50 entered on service record by me this 6/19/18."

At the time the application was made, the law provided that applications for insurance must be made within 120 days after enlistment or before the 12th day of April, 1918, whichever was the later date. War Risk Insurance Act, § 401, as added by Act Oct. 6, 1917, § 2 (40 Stat. 409), as amended by Act Feb. 12, 1918 (40 Stat. 438).

When the application was received by the War Risk Insurance Bureau in Washington, a record card was prepared. This record card contained a summary of the information given on the application, and on the side of it is the notation "Null and Void." Posey, a technical assistant in the United States Veterans' Bureau, who had been with the Bureau since June 10, 1918, and whose duties were to draft regulations and forms, testified that the words "Null and Void" were a notice to the writers of certificates of insurance that no certificates were to be issued in that case, and that it was the practice of his department to issue no certificate when a card was thus marked. The record card also contained the entries: "Date insurance effective 6/18/18," and "Certificate sent to 1 B." The figure and letter "1 B" referred to the single beneficiary, viz. the plaintiff, to whom insurance was made payable.

Posey also produced a premium card, not written until March 17, 1919, showing the certificate number, the application number, the applicant's name and address, the date when the application was made, and the notation "N & V" inserted in the blank opposite the month of June, 1918, and he testified that the letters "N & V" meant "Null and Void." The premium card contained blanks for the entry of premiums collected but showed no collections whatever. Posey likewise produced from the Veterans' Bureau file a certificate from the War Department to the Bureau made for the purpose of computation of adjusted compensation, showing that McCormack was in the army from July 16, 1917, to October 15, 1918.

The plaintiff testified that she had received a certificate or paper from Washington with a dark border, advising her that Edward McCormack had $10,000 insurance which she thought she gave to the Red Cross. But she made no showing of any effort to find or produce any such certificate, and in her application for compensation (sworn to November 12, 1920), in reply to the question in the official blank as to the number of the certificate of insurance issued to the deceased soldier, was the statement: "Insured but never received policy." While she and members of her family testified that they had no knowledge that McCormack was in the army from the time he came back from the Mexican border to May, 1918, and that they first heard of his entering the service of the United States for the World War in May of that year, she swore in her application for compensation that he was "Drafted into U. S. Army Aug. 5, 1917."

In the memorandum opinion of the trial judge he held that McCormack entered the army in July, 1917, and that the 120 days after enlistment within which he might apply for insurance had elapsed before his application on June 18, 1918.

▆ In view of the official records, we hold as a matter of law that McCormack's enlistment was in 1917, and not in 1918, and that no certificate of insurance was in fact issued or could lawfully have issued upon his belated application. The testimony of his relatives that after his return from the Mexican border they did not know of his re-enlistment in the army prior to May, 1918, may have been true. But any inference that he had not enlisted during the time he was said to have been living at home is dispelled both by the plaintiff's affidavit of November 12, 1920, when she applied for compensation, and by a mass of indubitable official records.

▆ This action was begun on May 29, 1929. On July 3, 1930, before the cause came to trial, section 307 of the World War Veterans' Act of 1924, was amended (38 U. S. C. § 518 [38 USCA § 518]) so as to read as follows:

*"Policies incontestable; exceptions; contest defined*

"All contracts or policies of insurance heretofore or hereafter issued, reinstated, or converted shall be incontestable from the date of issuance, reinstatement, or conversion, except for fraud, nonpayment of premiums, or on the ground that the applicant was not a member of the military or naval forces of the United States, and subject to the provisions of section 447 of this title: Provided, That the insured under such contract or policy may, without prejudicing his rights, elect to make claim to the bureau or to bring suit under section 445 of this title on any prior contract or policy, and if found entitled thereto, shall, upon surrender of any subsequent contract or policy, be entitled to payments under the prior contract or policy: Provided further, That this section shall be deemed to be effective as of April 6, 1917, and applicable from that date to all contracts or policies of insurance."

In directing a verdict for the plaintiff, the trial judge seems to have relied wholly on the foregoing amendment. The amendment only embraces "contracts or policies of insurance heretofore or hereafter issued." The question therefore arises whether any contract or policy "issued" in the present case. Section 401 of the War Risk Insurance Act was amended on December 24, 1919 (41 Stat. 374, § 12), so as to read as follows:

"That such insurance must be applied for within one hundred and twenty days after enlistment or after entrance into or employment in the active service and before discharge or resignation, except that those persons who are in the active war service at the time of the publication of the terms and conditions of such contract of insurance may apply at any time within one hundred and twenty days thereafter and while in such service: Provided, That any person in the active service on or after the 6th day of April, 1917, and before the 11th day of November, 1918, who while in such active service made application for insurance after the expiration of more than one hundred and twenty days after October 15, 1917, or more than one hundred and twenty days after entrance into or employment in the active service, and whose application was accepted and a policy issued thereon, and from whom premiums were collected, and who becomes or had become totally and permanently disabled, or dies or has died, shall be deemed to have made legal application for such insurance and the policy issued on such application shall be valid. * * *"

It is to be noticed that section 401 as amended rendered certain war risk insurance incontestable where the "application was accepted and a policy issued thereon" and where "premiums were collected." In other words, this section, like section 307 of the World War Veterans' Act (as amended on July 3, 1930), presupposes an acceptance of the application for insurance by the proper authority, and only makes the insurance incontestable where a contract or policy has "issued" in consequence of such an acceptance.

It is argued that the notation, "Certificate Sent to 1 B," in the record card (Exhibit D) tended to prove that a contract or policy of insurance was "issued," and hence that there was a question for the jury which precluded the direction of a verdict. But, in view of the record and testimony as a whole, it is clear that no such certificate was ever sent. It is also argued that the application was accepted, and this is based upon the statement at the foot of the application signed by the commanding officer that "Charge of premium $6.50 will be made by me monthly, * * *" and upon the notation in his handwriting, "This charge $6.50 entered on service record by me this day 6/19/18." But this is no proof that any premium was collected or deduction in fact made, and, in any event, there was no acceptance of the application by proper authority.

On October 6, 1917, Congress amended the act of 1914 (38 Stat. 711) which related only to marine insurance. The amended act (chapter 105, 40 Stat. 398) in article 3 (section 300 et seq.) provided for compensation for death or disability, and in article 4 (section 400 et seq.) for war risk insurance. In section 400 it provided:

"That in order to give to every commissioned officer and enlisted man * * * when employed in active service under the War Department * * * greater protection for themselves and their dependents than is provided in Article III, the United States, upon application to the bureau and without medical examination, shall grant insurance against the death or total permanent disability of any such person in any multiple of $500, and not less than $1,000 or more than $10,000, upon the payment of the premiums as hereinafter provided."

The amended act also established in the Treasury Department a bureau to be known as the Bureau of War Risk Insurance, and provided that the Director thereof, subject to the general direction of the Secretary of the

Treasury, should administer, execute, and enforce the provisions of the act and for that purpose should have authority to make rules and regulations appropriate to carry out its purpose. By virtue of these statutory provisions, the Secretary of the Treasury and the Director of the Bureau of War Risk Insurance were accustomed to issue certificates to applicants for insurance in the following form:

"The United States of America
"Treasury Department .
"Bureau of War Risk Insurance
"Washington, D. C.
"Certificate No. ———
"Date insurance effective———

"This certifies that ——— has applied for insurance in the amount of $———, payable in case of death or total permanent disability in monthly installments of $———.

"Subject to the payment of the premiums required, this insurance is granted under the authority of an Act amending 'An Act entitled "An Act to authorize the establishment of a Bureau of War Risk Insurance in the Treasury Department," approved September 2, 1914, and for other purposes,' approved October 6, 1917, and subject in all respects to the provisions of such Act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the Act, shall constitute the contract.

"W. G. McAdoo
"Secretary of the Treasury.
"William C. DeLanoy
"Director of the Bureau of War Risk Insurance.
"Countersigned at Washington, D. C.,
"A. Eaton,
Registrar."

Acceptance, if given, should have been by the Bureau of War Risk Insurance, and the statement of the commanding officer at the end of the application that the charge of premium would be made monthly was necessarily conditioned upon such acceptance. The commanding officer could not issue a cer-

tificate or policy, and never attempted to do this; nor could he have bound the United States had he made the attempt. In view of the inscription on the record card of the words, "Null and Void," and the failure to forward a certificate or to signify any acceptance otherwise, we interpret the notation, "Certificate Sent to 1 B," as meaning that the certificate was to be sent when and if the application should be accepted, and not that it had been sent.

In the present case no certificate was forwarded by the Bureau of War Risk Insurance and no act was done that signified its acceptance of the application or its purpose to enter into a contract of insurance.

Prior to the passage of the Act of July 3, 1930, amending section 307 of the World War Veterans' Act of 1924, there was a report in the Senate [Davis v. United States (D. C.) 57 F.(2d) 871, at page 873] which referred to the cases in which the proposed amendment was intended to render war risk insurance contracts incontestable. The report said:

"This incontestability would protect contracts where they were not applied for within the time limit required, where the applicant was not in the required state of health or was permanently and totally disabled prior to the date of application, or for any other reasons except those specifically mentioned in the statute."

■ This language of the report is thought by the plaintiff to indicate a congressional intent to make such claims as hers incontestable. But we cannot see that the report helps her case or indicates a purpose to transform an application for insurance into a contract. The Bureau of War Risk Insurance was not obliged to accept an application which came too late. It was their duty not to accept such an application, and they did not accept it. We find no proof that the United States ever agreed to assume any liability for war risk insurance upon the life of McCormack, and hold that on the record before us a verdict should have been directed for the defendant.

Judgment reversed.